## OTTEN v CINCINNATI (city)

Ohio Common Pleas, Hamilton Co

Decided Dec 28, 1937

Fred L. Hoffman, Cincinnati, for plaintiff.

John D. Ellis, City Solicitor, Cincinnati, and Ed. F. Alexander, Asst. City Solicitor, Cincinnati, for defendant.

## OPINION

By MORROW, J.

Plaintiff filed a petition for declaratory judgment. For five years he has been employed by the city of Cincinnati at an annual salary rate in the division of highways. He has also been, and is, an enlisted member of Troop K, 107th Cavalry, Ohio National Guard. In the year 1936 he informed his superior of his intention to attend the annual field training of his troop, and did so. He was paid his regular salary while taking such training. He desired to take a vacation following the encampment, and so informed the same superior, but the same was granted him without pay. A written demand was made for such compensation but defendant refused to pay compensation for services during vacation. on the ground that §5273-2, GC, was unconstitutional.

He states further that on December 11, 1936, he filed a written application for a vacation with pay, and in the application stated that the only leave of absence he had received with pay during 1936 was when in training with the cavalry troop. This application was refused for the same reason as his previous demand.

Then plaintiff sets forth the terms of §5273-2, GC:

"All officers and employees of the state, the several counties, cities and city school districts thereof who are members of the Ohio National Guard, naval militia, or officers reserve corps, shall be entitled to leave of absence from their respective duties, without loss of pay or time, for such times as they are in the military service on training duty under the orders of the governor

of the state of Ohio as the commander-in-chief, in case of the national guard and the naval militia, or competent authority in case of the officers reserve corps, for periods not to exceed 15 days in any one calendar year."

He also states that the civil service rules of the city of Cincinnati provide as follows:

"Annual vacation for permanent employees. The heads of all departments shall grant annual vacations with pay to all permanent employees in the municipal service employed on an annual salary rate for a period not to exceed the following:

"Employees who have been employed continuously for more than six months and less than one year—6 days (excluding Sundays and holidays). One year or more of service—12 days (excluding Sundays and holidays)."

Plaintiff states further that he expects to be employed during the period of the annual encampment in the year 1937, and also expects to continue his membership in the cavalry troop and attend the annual field training thereof. He wants to know:

(1) Whether the defendant is correct in refusing him compensation for a leave of absence with pay for vacation purposes in addition to a leave of absence granted with pay for attendance at the encampment of the Ohio National Guard on the ground that §5273-2, GC is unconstitutional.

(2) What, if any, right of action he has against the defendant by reason of the foregoing?

(3) What, if any, procedure is necessary for him to follow in order to obtain the benefits of the foregoing statute and civil service rules?

He asks for a declaratory judgment as to his rights.

To this petition the defendant, by the city solicitor, filed a general demurrer with memorandum attached.

The matter was argued and submitted and on July 30, this court decided as follows:

1. Plaintiff is entitled to a declaratory judgment.

2. The defendant is wrongfully refusing plaintiff compensation for leave of absence with pay for vacation purposes, in addition to a leave of absence granted with pay for attendance at the encampment of the Ohio National Guard.

3. Sec 5273-2, GC, is constitutional.

The above decision is amplified by this opinion.

This court has been somewhat embarrassed in considering this matter by reason of former associations, having served as a trooper in the military organization that plaintiff belongs to, but the city solicitor, upon being informed of this, and the court's suggestion to turn over the matter to another judge, asked that this court go ahead, and waived any question of prejudice.

The defendant city raises two questions by this demurrer:

1. The constitutionality of §5273-2, GC.

2. The right of plaintiff to invoke the Uniform Declaratory Judgments Act.

As to the first question, it was urged in argument that this is a law of a general nature, such as is referred to in **Article II, §26, of the Constitution of this State,** which reads in part:

"All laws of a general nature shall have a uniform operation throughout the state."

The assistant city solicitor pointed out that the section in question assumes to grant certain employees in the public service of the state (who also are in the military and naval service) certain vacation privileges, but that the section does not by its terms apply to others in the public service. For instance, those in the employ of townships, and villages, and school districts outside of cities, are in the public service in this state, but the statute does not reach them. In argument, it was claimed this was discriminatory and that therefore the law was unconstitutional.

We may assume from the terms of the act and the nature of the omission that the legislature hesitated to carry this law so far as to dislocate the public service, as might transpire if employees of the smaller subdivisions of the state were included, and by reason thereof induced to become members of the military or naval forces and caused thereby to undergo training elsewhere when their presence at home might be urgently needed.

The absence for fifteen days of one or more in the service of a small village, county school district or sparsely inhabited township might seriously impair the functioning of that political subdivision, bearing in mind that the military service must be performed at a definite time peremptorily set. Such a hardship might be accomplished in a village with one policeman,

a county school district with one teacher, for instance, and there are such in this state.

We find therefore that notwithstanding all political subdivisions are not within purview of the law, it is not discriminatory, there being a valid reason for the exclusion of certain political subdivisions and their employees from the operation of the law.

We are not pursuing this matter further, as counsel for the city made the point in argument, but makes no reference to it in his brief.

However, we might refer to the following cases: Toledo v Brown, 14 C.C. (N.S.) 165, 22 C.D. 357, in which the court says (P. 170) (former report) "It is enough to justify the upholding of an enactment, as a valid one if the classification appears not to be capricious and arbitrary." See also: Cleveland v Davis, 95 Oh St 52, 115 NE 503; and Miller v Korns, 107 Oh St 287, 140 NE 773, in which the court holds that "the requirement of uniformity of operation does not prevent reasonable classification." Also see City of Xenia v Schmidt, 101 Oh St 437, 130 NE 24 (Syllabus 5).

Certainly the provisions of Article XVIII, §3, of the Ohio Constitution, which provides:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local, police, sanitary and other similar regulations as are not in conflict with general laws."

and Article XVIII, §7, entitled "Local Self-Government," providing:

"Any municipality may frame and adopt or amend a charter for its government, and may, subject to the provisions of §3 of this article, exercise thereunder all powers of local self-government."

do not except Cincinnati (a "charter" city) and its employees from the operation of such a general law as §5273-2, GC. The very language of these two sections of the Constitution brings charter cities within the purview of general laws, and we are holding that this section is a general law.

In his memorandum the city solicitor says:

"Plaintiff has no controversy with the defendant. He had a controversy with the defendant some months ago in which he sought to compel the city of Cincinnati by mandamus to pay him a certain sum of money. The court resolved the controversy against plaintiff."

In a letter written later to this court the city solicitor states:

"As has been pointed out, if and when plaintiff attends the annual encampment of the Ohio National Guard, he can test his right to compensation by bringing an action in mandamus against the financial officers of the city."

In this letter a case is cited as authority for position of the city that plaintiff has no right to an action for declaratory judgment. While the statements of the city solicitor are somewhat outside the limits of our consideration of the record in a demurrer case, it is not entirely beside the issue to point out that the city solicitor suggests the plaintiff try again what he unsuccessfully tried to do after he lost his vacation pay the year preceding the filing of this suit.

The city solicitor states in his memorandum also:

"The best that can be said for plaintiff on the basis of the allegations set up in his petition, is that he thinks he will have a controversy with the city next summer. Quite a number of happenings before that time could definitely dispose of plaintiff's possible controversy."

He then quotes Bourchard on Declaratory Judgments, and states:

"We submit that the facts alleged in plaintiff's petition are not 'ripe to place him in gear with his adversary'." (Quoting Bourchard).

We disagree. His present status and rights as an employee for the current year are in question. He is on an "annual salary rate" and his vacation rights are those of one employed by the year.

Plaintiff says that §5273-2 GC purports to grant him fifteen days leave from his work to engage in military training, without loss of pay or time, and that under civil service rules he is also entitled to twelve days vacation with pay. This is an "annual vacation," so called by civil service rules. He asserts that he heretofore has been denied his vacation because he was absent on military training, and that this will take place in the future.

Plaintiff does not desire again to undergo military training and then find that his time so spent again has been counted as vacation, whereby he is confronted with the option of foregoing a vacation, or foregoing his salary during such vacation.

This proceeding saves a multiplicity of actions at law. He will not be compelled

to sue every time vacation pay is denied. See Greece v Murray, 130 Misc. 55, 223 N. Y. Supp. 606.

Counsel for the city hinted in argument that military training at Fort Knox comes under the heading of "vacation." Again we disagree,—this avocation is emphatically not a vacation, although it means absence from civil employment and change of occupation.

The state by this legislation intends to encourage military and naval preparedness. If the city's contention is correct, young men in employ of the city of Cincinnati tempted to undergo military training, will be deprived of vacations with pay.

The defendant has quoted Bourchard. There are many other quotations from Bourchard which seem to me to apply to the case with more accuracy.

The striking language of Congressman Gilbert in a debate on the first Federal Declaratory Judgments Bill is interesting in this connection and is quoted by Bourchard on Declaratory Judgments, page 42:

"Under the present law you take a step in the dark and then turn on the light to see if you stepped into a hole. Under the declaratory judgment law you turn on the light and then take the step."

Or, as was stated by the court in the case of Faulkner v City of Keene, 85 N. H. 147, 155; 155 Atlantic 195, 200, also cited by Bourchard on page 42:

"Under declaratory procedure, the court does not have to say to 'the prospective victim that the only way to determine whether the suspect is a mushroom or a toadstool is to eat it'."

The Pennsylvania Supreme Court in an exhaustive opinion (Kariher's Petition No. 1) 284 Pa. 455, at 471, 131 Atlantic 265, at 271, said:

"By 'ripening seeds' the court meant, not that sufficient accrued facts may be dispensed with, but that a dispute may be tried at its inception before it has accumulated the asperity, distemper, animosity, passion and violence of the full blown battle which looms ahead."

The Uniform Declaratory Judgment Act was effective October 9, 1933, in Ohio, and while we have read the case of **Eiffel Realty & Investment Co. v Ohio Citizens Trust Co., 55 Oh Ap 1 (23 Abs 562), 8 OO. 325,** as clearly in point, we do not feel that this case is a bar to relief in the instant case. The court there said in effect, that the proceeding for declaratory judgment is not a substitute or alternative for the common law or statutory actions existing at the time the act was adopted in Ohio, and the second syllabus points out that for the relief requested the plaintiff had an adequate remedy in ejectment. In the strong dissenting opinion in this case the judge points out that the strict application of the rule adopted by the majority court would lead to the conclusion that it was hardly worth while to enact a declaratory judgment act. He points out:

"It has always been a fundamental maxim that equity will not suffer a wrong to be without a remedy and that in equity even an anticipated wrong which has not yet actually occurred, may be prevented and the rights of the parties established by injunction on the equity side of the court."

However, it is true that the syllabi in this case, of which the substance has been quoted above, do hold that a declaratory judgment cannot be invoked if there is a common law or statutory action existing which is available to the plaintiff. At the present stage of the proceedings we know of no statutory or common law action available to plaintiff, and if suggestion of defendant's counsel is taken later, it would appear that plaintiff would do unsuccessfully again what he attempted to do in 1936, as has been pointed out heretofore.

The spirit of the Uniform Declaratory Judgment Act would seem of importance. §12102-1, GC, states in part:

"Courts of record within their respective jurisdictions shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed."

This language would seem to indicate that it is an alternative remedy, notwithstanding the pronouncement of the court in the Eiffel Realty & Investment Co. case quoted above.

Sec 12102-2 GC states as follows:

"Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise, and obtain a declaration of rights, status or other legal relations thereunder."

This section does not say, in effect, that

such declaration is not available if other statutory or common law remedies exist.

Sec 12102-3 GC states:

"A contract·may be construed either before or after there has been a breach thereof."

We are certainly, in a real sense, construing a contract of employment between a civil service employee and the city.

Sec 12102-8 GC, entitled "Further Relief," states as follows:

"Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper. The application therefor shall be by petition to a court having jurisdiction to grant the relief. If the application be deemed sufficient, the court shall, on reasonable notice, require any adverse party whose rights have been adjudicated by the declaratory judgment or decree, to show cause why further relief should not be granted forthwith."

This section would indicate that the plaintiff in this case is justified in going even further than a mere declaration of rights.

In this connection we again desire to quote Bourchard, who states (page 160) in commenting upon a similar section in the Michigan Act:

"This should make it clear that a declaration may be sought and granted, even though further coercive relief might be or might have been possible. It assumes that declarations of rights alone might be and would be sought. It was assumed, on the basis of long experience, that, when a declaration of rights had settled the legal issue between the parties * * * it would hardly be necessary for the sheriff to be invoked to enforce the judgment by coercion. * * * But if a losing party should have the temerity and recklessness to defy the court's declaratory judgment, which irrevocably fixes the rights of the parties, the winning party and the court are not helpless, but on motion, in which the declaratory judgment is res judicata, an order may issue carrying the judgment into coercive execution. The very terms of the section indicate that the declaration may and usually is expected to stand alone."

There is also cited to this effect Storer v Great Western Railway Co., 2 Y. & C. 48:

"There has always been unanimity on this point that the declaratory judgment, if disregarded or disobeyed, may be carried into execution by coercive decree."

To the same effect Fischer v Secretary for India, L. R. 26 Ind. Ap. 16, p. 29.

Sec 12102-12 GC provides:

"This act is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and it is to be liberally construed and administered."

Certainly this is a case in which it seems proper to invoke the act, and the plaintiff might accurately be said to require relief from uncertainty and insecurity with respect to his rights under a present contract of employment. Thus in Bourchard, page 317, under the heading "Claim of Specific Privilege under Contract," it is stated:

"Specific privileges under a contract are frequently claimed before their exercise is attempted. If their exercise is sustained as permissible under the contract, the plaintiff has the assurance that he is not subject to damages or penalties for breach."

And there is cited an English case wherein a declaration was sought that plaintiff was privileged to work as an employee, notwithstanding an agreement against entering into competing business.

Another declaration was sought as to right to reduce defendant's wages.

The latter case is not readily available as an authority, being from Austria.

As a further commentary on the suggestion of defendant's attorney that some other method should have been taken by the plaintiff to settle this question, and that he should have waited, I desire to quote Bourchard again, page 342.

"It can hardly be supposed that a government official, the legality of whose act is challenged, requires more than a decision on the disputed question of law, and that injunction to restrain or mandamus to command him is anything more than a mere formality. The decision, not the coercive order, settles the dispute. The idea that it is necessary for one branch of the government forcibly to restrain or punish another branch or instrument of the government, in order to achieve respect for the declared law, is anomalous."

The court said in the case of Tirrell v Johnston, Attorney General, 171 Atlantic, 641, (N. H. 1934):

"When the law is settled it will be obeyed. It is therefore immaterial whether the proper proceeding is an application for a restraining order or a petition for a de-

22

claratory judgment. A final interpretation of the law in either form of proceeding would be binding upon these parties".

This would seem to be in line with the liberal interpretation of this act as enjoined by §12102-12 GC.

The following Ohio cases seem to disagree with the majority of the court in the Eiffel Realty & Investment Co. case.

**Flowers v Metcalfe, 4 O.O. 301,** states:

"The legislative intent in the enactment of the Declaratory Judgment Act was not to 'scrap' the statutory remedies nor the common law remedies, for under it the court's jurisdiction is alternative in most cases. It is an independent act complete in its subjects of jurisdiction and its remedy not to be restricted or modified by another established remedy.

See also **R.K.O. Distributing Corporation v Film Center Realty Co., 3 O.O. 524,** which states:

"The Declaratory Judgment Act is of great value in determining controversies between litigants with a minimum of loss and is to be construed liberally."

There seems to be but one pronouncement of the Supreme Court relating to declaratory judgments, **Walker v Walker, 132 Oh St 137, 7 O.O. 237,** wherein the court refused to render a decree because uncertainty and controversy would not be terminated thereby. The case is beside the issue here, but the court states on page 139:

"The Declaratory Judgment Act is a salutary remedial measure and should be liberally construed and applied."

To the same effect see **Kochs v Kochs, 49 Oh Ap 327 (19 Abs 221), 2 O.O. 212:**

We are discussing this matter at this length in order to indicate why we are not following the narrow lines of the majority opinion in the Eiffel Realty & Investment Co. case. The plaintiff here states that his right to a vacation with pay under his present annual term employment is endangered by the claim of the defendant city that such vacation with pay is apparently authorized by a statute which is unconstitutional, and the general language in the case of Earl of Dysart v Hamilton & Co., 1 Chancery, 822 (1914) seems to justify this proceeding:

"In some of these contested claims the plaintiff demands stabilization or protection for rights endangered by defendant's claim rather than escape from any pending or potential liability."

Following the discussion of Borchard in the first chapter of his book on the "Theory of The Action," we feel that as to this action—

1. A useful purpose will be served in that the uncertainty as to plaintiff's privilege status will be dispelled.

2. We are convinced of the justiciability of this claim, that is to say, it is neither "fictitious, colorable, hypothetical, academic or dead," but on the other hand, a "genuine, live controversy" of a substantial nature.

3. There are adverse interests in a sense that if the plaintiff prevails here the city pays his salary for twelve days, of vacation during the current year, otherwise not.

This is not a collusive case, and as is said on page 39, (Borchard) the plaintiff has a "legal interest."

"The asserting of the plaintiff's privilege * * * is as much worthy of judicial protection as the claim of plaintiff's rights and powers or of defendant's duties and liabilities. The great advantage of the declaratory judgment is that it enables the point in dispute to be raised at the inception of the controversy, before damage has been done by acting on one's own view of his rights, and that it enables the issue to be narrowed within the strictest limits. For example, the plaintiff may assert his right to a weekly statement of his wage computation." (Citing Simmons v Newport, etc. Coal Co., 3 King's Bench, 131).

In answer to the three questions which plaintiff sets forth on the last page of his petition (quoting on Page 3 of this opinion) and in view of the above statements and quotations, we state as follows:

1. The defendant is wrong in refusing plaintiff compensation for leave of absence with pay for vacation purposes, in addition to leave of absence for military training.

2. The right of action chosen by plaintiff, namely, a declaratory judgment, was properly chosen. In this connection the provisions of §12102-8 GC, discussed above seem a proper basis for further coercive relief, if the same is necessary.

3. The provisions of §12102-8 GC also contain the answer to question 3.

Notwithstanding defendant's insistence that the Eiffel Realty & Investment Co. case should govern in this matter, we feel privileged to depart from the general pronouncement of its syllabus, although a

Court of Appeals case (Lucas County), and in view of the general provisions of the statutes we have quoted above, and holdings otherwise by two Nisi Prius courts in this state, it seems to us that the Declaratory Judgment Act was passed for the purpose of settling just such controversies as the instant case discloses. Hence we are holding that the plaintiff should prevail.