PINCELLI, PLAINTIFF, *v.* OHIO BRIDGE CORPORATION ET, DEFENDANTS.

Common Pleas, Court, Athens County.

No. 23176. Decided February 25, 1964.

*Mr. John A. Jenkins, Messrs. Knepper, White, Richards & Miller, Mr. Hal H. Rowland, Messrs. Rowland, Bridgewater & Gray,* for plaintiff.

*Mr. Homer B. Gall,* prosecuting attorney, for defendants.

*Mr. Samuel B. Erskine, Mr. Lawrence D. Stanley, Mr. J. Ralston Werum, Messrs. Porter, Stanley, Treffinger & Platt,* for defendant Ohio Bridge Company.

*County Commissioners' Association of Ohio, County Engineers' Association of Ohio, Ohio State Association of Township Trustees and Clerks,* and *Mr. Huntington Carlile,* for Amicus Curiae.

BOLIN, J. No statement or conclusion made in this decision shall be construed as reflecting upon the conscientious and honest performance of their legal duty of any elected official of Athens County, but is solely an interpretation of the statutes

and cases of Ohio as the court understands and interprets them and any reference to any statements out of context is not warranted.

This action is brought by the plaintiff as a citizen, resident, taxpayer of Athens County.

Plaintiff's Exhibit No. 22 shows that the plaintiff prior to the petition being filed made a written request to Homer B. Gall, Prosecuting Attorney, to file an action in this cause, which request was refused, and therefore this action was filed by plaintiff as a taxpayer. The evidence is ample that the plaintiff is a resident and a taxpayer of Athens County, and was qualified to institute the action.

The facts as disclosed by the evidence show that on January 7, 1963, under the provisions of Section 5543.19, Revised Code, the County Commissioners of Athens County adopted the following, as shown on the Journal:

"Be is Resolved that in accordance with Section 5543.19, Revised Code, of the State of Ohio the Athens County Engineer shall be and is hereby authorized to construct, reconstruct, improve, maintain or repair roads, bridges, and culverts by Force Account for the year 1963.

That some time in March, the 4th or 7th, 1963, the wooden covered bridge over Federal Creek was washed out by flood. During April and May the County Engineer prepared specifications for the bridge over Federal Creek (R. 9) and on April 19th and May 3rd the Ohio Bridge Corporation submitted proposals for construction of the Federal Creek Bridge. (Exhibits 9b and 9c.) On May 20, 1963, the Engineer issued the order to the Ohio Bridge Corporation (Exhibit 9a) and on May 27th construction started.

The Engineer testified that no advertisements for bids were made (R. 10).

The Engineer also testified that there was a quotation from the Champion Bridge Company, Defendant's Exhibit "E" for the replacement of this bridge over Federal Creek at Big Run, R. 68, and that he prepared an analysis showing the difference in cost between the two proposals, one from the Ohio Bridge and the other from the Champion Bridge Company. Again on page 70 of the record, the Engineer testified:

Q. What if anything did you do with those two proposals?

A. I studied them both very carefully and arrived in my own mind that the proposal of the Ohio Bridge Company was the cheaper and I advised the Commissioners that we accept their proposal to build the bridge.

Q. And I assume that was based upon a complete analysis of the two proposals?

A. Yes. R. 70-71.

The Federal Creek Bridge cost, according to the Engineer's purchase order, $44,428.00.

The records further show that later the same year repairs were made to the Frost Bridge over the Hocking River on County Road 58 and a purchase order was issued by the Engineer to the Ohio Bridge Company on this in the sum of $16,-128.00.

The record shows that the repair job on the Frost Bridge and the issuing of the purchase order to Ohio Bridge Corporation was processed in the same manner as the Federal Creek Bridge construction without any advertising for bids, the only difference being the Champion Bridge Company apparently did not submit a proposal. And the Ohio Bridge Company did the repair work.

The plaintiff bases his case upon the provisions of Chapter 153 and particularly Sections 153.31, 153.32, 153.33, 153.34, 153.35, etc., Revised Code.

The defendants contend that the County Commissioners and Engineer may proceed to construct and repair bridges under the provisions of Section 5543.19, Revised Code, as was done in this case.

The court on consideration of the pleadings and the evidence feels that the real crux of the case depends upon the interpretation of Section 5543.19, Revised Code, which is as follows:

"Employment of labor and materials.

"The County Engineer may, when authorized by the Board of County Commissioners, employ such laborers, and teams, lease such implements and tools, and purchase such materials as are necessary in the construction, reconstruction, improvement, maintenance, or repair of roads, bridges and culverts, by force account."

The court feels that it is proper at this time to re-state the general concept of courts when it is necessary to interpret the legislative enactment or statute.

"Courts have no function of legislation; the court function in this regard is simply to seek to ascertain the will of the legislature in its enactment of a law, and to give the language used therein that plain meaning which the words and sentences upon their face imply." 14 Ohio Jurisprudence (2d), Courts, Section 87, page 502.

It has been stated many times by our Appellate Courts and the Supreme Court of Ohio: "That the terms of a statute may be interpreted in the light of Historic Background. Where the language of a statute is obscure or of doubtful meaning, the court, in construing such statute, may consider the history of the times it was passed." 50 Ohio Jurisprudence (2d), Section 251, page 235. This court does not feel that this section is obscure but the rather long time interpretation apparently placed on it, makes the Background important.

In studying the meaning and the purpose of Section 5543.19, Revised Code, the court feels that it is bound to consider whether or not there is a similar statute which by its provisions provides for the same purpose as this section was used in the present case.

The other section that the court will consider is Section 153.32, Revised Code.

In considering Section 153.32, Revised Code, it was originally passed "An Act providing for the erection of public buildings" January 22, 1810 amended January 25th, 1813, and amended March 3, 1831 (Chase's Statutes, Vol. 11, page 1391-1392), and carried a provision such as Section 4:

"That when the Commissioners shall determine to erect any of the buildings aforesaid, or finish, repair, or alter any buildings already erected * * * they may either receive sealed proposals for the performance of the whole or any part of the labor, or for furnishing material, or may sell the same at public auction to the lowest bidder and the person making the best proposal, or the lowest bid (as the case may be) shall receive the contract, if, in the opinion of the commissioners, he is a proper person to undertake such work."

It was again amended February 16, 1871, and in this

act *Bridges* were included with other public buildings such as court house, jail and infirmary or when it shall be necessary to alter or repair * * *.

Laws of Ohio, Volume 68, page 21:

"And where it shall become necessary to erect, or cause to be erected, any bridge, such commissioners shall determine the length and width of such bridge, whether the same shall be of single or double track, and shall advertise, as in the ninth section of this act provided, for proposals for performing the labor and furnishing the materials necessary to the erection thereof and the commissioners may, but are not required to prepare or cause to be prepared plans, descriptions and specifications for such bridge, which shall be kept on file in the auditor's office for inspection by bidders and all persons interested, and invite bids or proposals in accordance with the same, but they shall also invite, receive and consider proposals on any other plan at the option of bidders and shall require that all proposals on such other plan shall be accompanied with plans and specifications showing and setting forth the number of spans, the length of each, the nature, quality and size of the materials to be used in the erection of such bridge, the strength of the structure when completed, and the separate cost of base and super-structure when any proposal includes both, and also whether there is any patent right on the proposed plan, or on any, and if any, what part thereof. And the said commissioners shall, in their advertisements for proposals, invite bidders to make the same for furnishing all the materials and performing all the work, or for such parts thereof as bidders may see proper, and shall state the time and place when and where bids will be opened and the contract or contracts awarded, at which time and place, or at a time to which they shall publicly adjourn the consideration of the same, they shall publicly open, read and examine such proposals as may have been made, and shall award the contract or contracts for the furnishing of the material for and for the erection of such bridge as a whole, or in parts, to the person or persons giving security as required by law, who shall be the lowest and best responsible bidder or bidders, considering price, plan, material and method of construction. And the plan or plans and specification or specifications upon and according to which such contract or contracts may be awarded,

shall be kept on file in the office of the auditor, and shall be, and be made a part respectively of the contract or contracts with the successful bidder or bidders as in this act provided for other contracts. And when it shall be necessary to make any addition to, or alteration or repairs of any bridge, the said commissioners shall, in making contracts for the same, conform to the provisions of this section in relation to the erection of bridges as nearly as the nature of the case will permit.''

In considering the history of Section 5543.19, Revised Code, it was originally Section 7198, General Code, was a part of Senate Bill No. 123, passed May 17, 1915—106 Ohio Law, 616, and read as follows:

Section 7198 (Section 155). ''The county highway superintendent may, with the approval of the County Commissioners or township trustees, employ such laborers, teams, implements and tools, and purchase such materials as may be necessary in the performance of his duties.''

The court would point out that the section as then passed did not contain ''by force account.''

On March 20, 1917, the legislature passed Amended House Bill No. 300. 107 Ohio Law, 69, and on page 115 passed the Amended form of 7198 which read as follows: ''The County Surveyor may when authorized by the County Commissioners employ such laborers and teams, lease such implements and tools and purchase such materials as may be necessary in the construction, reconstruction, improvement, maintenance of roads, bridges and culverts by *force account*.''

By *Force Account*: A very careful search of law dictionaries, words and phrases, decided cases, parallel statutes of other states (which were not found) did not help the court with the definition of what was meant. The court did find certain laws that were in effect for many years which the court feels were the basis of *force account* and they were as follows:

On March 7th, 1831, the legislature passed Act Vol. 111, Chase's Statutes 1788-1833, page 1855, which was entitled ''An act defining the duties of supervisors of roads and highways'' which provided in part as follows:

''Sec. 1. Be it enacted, That all male persons between twenty-one and sixty years of age, who have resided three months in this state, and who are not a township charge, shall

be liable yearly and every year, to do and perform two days work on the public roads, under the direction of the supervisor within whose district they may reside.''

Sec. 2. That it shall be the duty of every supervisor, to order out every such person resident as aforesaid, between the first day of April and the first day of October, annually, to do and perform the work aforesaid, on the public roads within his district and if such resident, being personally warned by the supervisor * * * shall refuse or neglect having had at least three days notice to attend by himself or substitute to the acceptance of the supervisor, on the day and at the time and place directed by the supervisor; or having attended shall refuse to obey the directions of the supervisor; or shall spend the time in idleness and inattention to the duties assigned him; every such delinquent shall forfeit and pay for each day he shall so refuse or neglect to attend, or for any of the offenses above specified, the sum of one dollar to be recovered by action of debt * * * and the money so collected shall be paid over to the township treasurer.

* * *

Sec. 4. That every person called upon to perform labor upon the public roads and highways, under the provisions of this act shall appear at the place appointed by the supervisor at the hour of seven in the forenoon, with such necessary tools and implements as said supervisor may direct and the supervisor may, if necessary to the improvement of the roads, order any person owning the same, to furnish a team of horses or oxen and wagon, cart, or scraper, or plough, to be employed or used on the roads under the direction of said supervisor, who shall allow such person a reasonable compensation for the use of such team, wagon, cart, scraper or plough in discharge of any labor or tax due from said person.

The act further provided that when any road was lain out or was in need of repair the supervisor could enter upon the adjoining land and cut timber, and dig stone or gravel for the improvement or repair of said highway.

It was further provided by the act and its amendments that persons who failed to work had to pay in cash $1.00 per day for each day they failed to work and if not paid the supervisor was authorized to sue and collect and all money collected was

174

paid into the treasurer for repair of roads. This act was amended in 1910 (101 Ohio Law, 229), and read as follows:

Section 3375. Except honorably discharged soldiers who served in the United States Army during actual war, pensioners of the United States government, acting and contributing members of companies, troops and batteries of the Ohio National Guard during membership, and members of a fire engine, hook and ladder, hose or other company, for the extinguishment of fire or the protection of property at fires, under the control of the corporate authorities of any municipal corporation or township outside of municipal corporation who receives no pay for their services as such acting members, all male persons between the age of twenty-one and fifty-five years, able to perform or cause to be performed the labor herein required, shall be liable annually, to perform two days' labor on the highways, under the direction of the road superintendent of the road district in which he resides.

Section 3376. If a person, being warned as hereinafter provided, pays to the road superintendent in whose district he resides the sum of three dollars within three days after being notified by the road superintendent, the amount shall be received in place of the labor, and paid by him to the township treasurer, and placed in the fund for the improvement of roads in the township in which such person resides.

\* \* \*

Section 3379. The trustees of the township may direct the time when the labor shall be preformed, and shall cause all road superintendents, in the township, to perform all work on the public roads in such manner and time and at such places as the trustees direct.

\* \* \*

Section 3381. Any person called upon to perform labor upon the public roads and highways under any provision of this chapter shall by himself or substitute, appear at the place appointed by the road superintendent at the hour of seven o'clock in the forenoon with such necessary tools and implements as the road superintendent directs. If necessary for the improvement of the road, the road superintendent may require any person owning them to furnish a team of horses, mules, or oxen, and wagon, cart, plow, or scraper, to be employed and

used on the roads under the direction of the road superintendent.
* * *

Section 3385. For the benefit of the roads and highways the township trustees may employ day labor, and teams with a driver for each time, at such reasonable rate per hour for each hour actually employed as the trustees determine, and may hire traction engines at such reasonable rate as the trustees determine to be paid from the road fund of the township in which the work is performed as other bills are paid.

This act whereby residents had to work two days on highways, and furnish teams, oxen, plough scrapers, wagons and to take timber and stone all for the construction and repair of roads continued as a part of our statutes to April 16, 1913, when the legislature repealed the provisions for this method of road building and repair. Only four years later the legislature first included the words *Force Account* in Section 7198, Revised Statutes, where the county highway superintendent was given authority to *hire* labor, teams, implements, and tools to build and repair roads and highways, which he had prior to 1913 in being able to call labor for two days work each year and requiring them to bring their teams and carts, wagons and tools and the right to go on land and take timber and gravel and sand stone.

The court feels that *force account* from this background means the county highway superintendent or surveyor or county engineer was to do the work on the roads from the labor he could hire locally and ready at hand and available to him, and with the tools and equipment that he could hire and the materials readily available. In other words what labor, tools, equipment and materials that was readily available to him he could hire, rent and buy, and under his supervision he could construct, reconstruct, improve, maintain roads, bridges and culverts (by force account).

In 107 Ohio Law, 69, Section 6956-4, General Code, county highway superintendent shall hereafter mean "County Surveyor." Sec. 5 The words "County Highway Superintendent" found in any section of the General Code of Ohio not herein amended or repealed shall after the taking effect of this act be read "County Surveyor."

The term "force account" is used in the statutes govern-

ing the construction, reconstruction and repair of streets, culverts and bridges both by the State, Sections 5517.02, 5517.04, 5525.16, 2nd paragraph; County 5543.19; Townships 5575.01 and Municipalities Section 723.52-.53, Revised Code.

From the wide spread use of the term *force account* appearing all through the various sections of the code pertaining to construction, reconstruction and repair and maintenance of public ways and bridges, "Force Account" certainly had a definite and fixed meaning at the time the legislation was enacted using the term in 1917. And this court feels that the meaning is the same wherever used in the statutory law of Ohio.

In studying the various sections in which the term force account has been used beginning with the enactment of Section 7198, General Code, in 1917 the court finds that force account means the construction, reconstruction, repair and maintenance of roads and bridges by the use of the County's own construction forces and purchasing their own materials and leasing the necessary equipment and under the supervision of the County Engineer.

It should be borne in mind that one method or procedure for the construction of roads and bridges and their maintenance had been provided by the legislature, which are now Section 153.31 to Section 153.35, Revised Code, and these provisions for submission to the public for bids, by public notice and the submission of the project for the lowest and best bid, this provision and policy of the law goes back almost to the very beginning of our state.

This court finds that the legislature has from the very beginning laid down the rules and the method by which the taxpayers were and are to be protected. And this was by advertising the project to be constructed, or repaired, and asking for bids, and thereafter awarding the contract for the construction or repair to the lowest and best bidder, all of which was to be conducted openly and under public scrutiny.

Our Supreme Court has stated in this respect (60 Ohio St., 406, on page 425, *Buchanan Bridge Company* v. *Campbell et al*) "If such statutes could be evaded, there would always be found some public servants who would be ready and willing to join in transactions detrimental to the public, but favorable to themselves or some favored friend; and if public officers

should be ever so honest, some persistent agent or salesman would impose upon them, and obtain more out of the public treasury than is justly due."

The provisions of Section 153.31 to Section 153.35, Revised Code, lay down in clear, unambiguous terms the method by which costly public improvements can be built. And it was enacted over 150 years ago and is still in effect.

It is apparently the contention of the defendants that the enactment of Section 7198, General Code (now Section 5543.19, Revised Code), in 1917, established a new procedure for the county to enter into contracts for the construction of major projects.

As already pointed out *force account* was added by the legislature in 1917 to Section 5543.19, Revised Code (Section 7198, General Code).

At the same time term of the legislature (1917) Section 6948-1, General Code, was passed as a part of the same act as Section 7198, Revised Code. 107 Ohio Law, 69, and Section 6948-1, General Code, provided "If the County Commissioners deem it for the best interest of the public they may, in lieu of constructing such improvement by contractor, proceed to construct the same by force account."

The court points out this part of this provision *"IN LIEU OF CONSTRUCTING SUCH IMPROVEMENT BY CONTRACTOR, PROCEED TO CONSTRUCT THE SAME BY FORCE ACCOUNT."*

The present Section 6948-1, General Code, is:

"Section 5555.71, Revised Code. Construction by force account; estimate; procedure.

"Before undertaking the construction, reconstruction, widening, resurfacing, repair, or improvement of a road, the Board of County Commissioners shall cause to be made by the County Engineer an estimate of the cost of such work, which estimate shall include labor, material, freight, fuel, hauling, use of machinery and equipment, and all other items of cost. The Board *may in lieu of constructing such improvement by letting the work by contract, proceed by force account.* * * *."

The provisions of Section 6948-1, General Code and Section 5555.71, Revised Code, certainly do not mean that if the Commissioners decide that they will not advertise and let the

178

contract by public bidding, they can authorize the Engineer as an individual to award the contract *without advertising*, and submission of competitive bids.

From a study of all the statutes and most important those passed in the same general act of 1917, it is abundantly clear the legislature intended that *force account* meant that the county would act as its own contractor, and perform the various phases of the construction by using labor employed by the county engineer, and using the equipment leased by the county engineer, with materials bought by the county engineer, and the work to be supervised by the county engineer or one of his deputies directly under the county engineer. No stretch of the imagination can read into the words of Section 5543.19, Revised Code, that the county engineer may shop around and enter into a contract for some contracting firm to perform the whole contract for a total set figure arrived at by the county engineer.

Under the statutes and the resolution of the Commissioners of January 7, 1963, the Engineer did not have the authority under the law to enter into the arrangement with the Ohio Bridge Company.

The court has made a prolonged research of the law pertaining to Section 5543.19, Revised Code, and cannot find, in its opinion, any justification for the practice that has apparently developed throughout Ohio whereby both county, villages, cities and townships have proceeded to abandon the clear requirement of Section 153.31 to Section 153.35, Revised Code, or similar statutes depending on the political sub-division and proceeded to have their engineering officers let contracts for extensive construction amounting to thousands of dollars in practically any manner the individual engineer may desire at the time.

If public bidding after public advertisement, giving notice of the intended construction of a public project, with the submission of bids and the awarding of the contract for said construction to the *lowest* and *best* bid, is to be abandoned it is within the power of the legislature alone to so declare.

No commission, board, bureau or administrative agency has the authority to change the clear intent of the statutes.

Section 5705.41 (D), Revised Code

The plaintiff alleges and the testimony of the Auditor dis-

closes that no certificate of the County Auditor was issued that funds were available. R. 23.

The Supreme Court of Ohio has held in *State* v. *Kuhner*, 107 Ohio St., 406, that the provisions of Section 5705.41 subsection D, Revised Code, are mandatory. The court cannot find where this case or the interpretation of the requirements as to certificate of the availability of funds have been changed by the Supreme Court of Ohio.

The court finds that the case of *Buchanan Bridge Company* v. *Campbell*, 60 Ohio St., 406, is the law as far as parties involved in public contracts not provided by law. Courts leave the parties where they have placed themselves.

The State, County, Municipalities and Townships will have to appeal to the Legislature, if the statutes are to be changed.

The court therefore grants a permanent injunction enjoining W. H. Wakefield, G. John Cline and James Edwards and Harry Dusz, Athens County Engineer, and each of them from issuing or causing to be issued any requisition to the defendant James W. Whaley, Athens County Auditor for a warrant for payment to the defendant, the Ohio Bridge Corporation for the construction of said bridge on Road C-85 (over Federal Creek) or for the repair of said bridge on Frost Road (over the Hocking River) and said James W. Whaley, Athens County Auditor is enjoined from issuing or causing to be issued any warrant for the payment to the Ohio Bridge Corporation for said construction and repair of said bridges. And enjoining defendant Vaughn Earich, County Treasurer, from paying any sum of money to the defendant, the Ohio Bridge Corporation, for construction or repair of said bridges.