The Home Ins. Co. et al., Appellees, v. Board of County Commissioners of Lorain County, Appellant.

(No. 1193—Decided November 2, 1949.)

*Mr. Dan K. Cook,* for appellees.

*Mr. Paul J. Mikus,* prosecuting attorney, and *Mr. Harold S. Ewing,* for appellant.

Hunsicker, J. The facts in this appeal on questions of law show that the defendant (appellant), Board of County Commissioners of Lorain County, Ohio, herein called County, authorized, by proper resolution, the Lorain county engineer to rent, from Sam Falbo, one of the appellees herein, a road grader for road improvement work.

The rental agreement for the road grader provided that Falbo would furnish the equipment, operator, gasoline, oil, and all incidental expense incident to the use of such equipment. The County determined the place and manner of work, agreed to return the equipment at the end of ten days in good condition, subject. only to reasonable wear during its use, and promised to pay therefor the sum of $56 per day.

After six days of use, the operator of the road grader drove it onto a railroad crossing into the path of an oncoming railroad train, resulting in his death and the almost complete destruction of the equipment.

The grader, in its damaged condition, was thereupon returned to Falbo, who demanded from the County the damages he had sustained by reason of the failure to return it to him in good condition, less the reasonable wear during its use by the County.

This request the County refused. Falbo then made a settlement with The Home Insurance Company, the other appellee, herein called Company, who had issued to Falbo a $50 deductible collision insurance policy on this equipment. Falbo thereafter executed a subrogation agreement to the Company for such claim as Falbo might have against the County.

The Company and Falbo then filed an action in the Common Pleas Court of Lorain County, to recover against the County the value of the equipment so rented to the County.

The County, by way of answer, admitted that: By proper resolution and authority, it entered into the rental agreement; the grader was totally destroyed while so rented by it; the destruction of the grader was caused by the negligence of the operator thereof.

A verdict and judgment thereon were rendered in favor of the Company and Falbo for the respective losses sustained by them. It is from such judgment that this appeal is taken.

The questions which should first be determined herein are: What was the relationship between Falbo and the County, created by the rental agreement the parties entered into? Was the operator of the equipment the employee of Falbo or the employee of the County?

The County, by express statutory provision, is permitted to lease equipment as was done in the instant case. See Section 7198, General Code.

Whenever a chattel—that is, personal property—is hired out for use by the hirer, and such person in whose custody such property is placed thereby has the use of the chattel (for the time he has the chattel), there arises that form of bailment known in the ancient common law as "*locatio rei.*" This is now known as a bailment for mutual benefit. 6 American Jurisprudence, Bailments, Sections 13 and 14.

A bailment for hire may arise by operation of law or by express contract. It exists when an article or personal property is delivered by an owner to another for such other's use and benefit, who agrees that, after its use, such property shall be returned to the owner, the owner receiving therefor some compensation for such use. 5 Ohio Jurisprudence, Bailment, Section 2; 8 Corpus Juris Secundum, Bailments, Section 8; 4 Williston on Contracts (Rev. Ed.), Sections 1032 and 1041; Black's Law Dictionary (Third Ed.).

In the instant case, there was a delivery of personal property to the County, which property was to be used by the County for its own purposes for a period of ten days. Thereafter, it was to be returned to the owner in good condition, less reasonable wear. The owner of such property was to receive, for such use, a stipulated rental payment.

There arose by reason of this arrangement a bailment, not by operation of law, but by the express agreement of the parties.

The rights of the parties are to be determined by the express provisions of the contract into which they entered. By the terms of that contract, Falbo was entitled to have his grader at the end of ten days' use, unless it could be shown that some lawful excuse existed for a failure to redeliver it to Falbo. *Agricultural Ins. Co.* v. *Constantine,* 144 Ohio St., 275, 58 N. E. (2d), 658; *Hanlon* v. *J. E. Miller Transfer & Storage Co.,* 149 Ohio St., 387, at page 391, 79 N. E. (2d), 220.

By the terms of the contract herein, the operator was employed by Falbo, but under the express control and direction of the County. The County directed the use and operation of the grader. It told the operator where to go, what to do, and the manner of doing the work sought to be accomplished. Can it then be said that the operator was the agent of Falbo? We think not, for the essential element of control of his servant had been taken from him. The operator's authority and supervision were given him by the County. It was the County's agents who controlled his actions, not Falbo.

"2. Where an employer loans his employee to another person to do work for and under the direction of the latter, the employee in the doing of such work is regarded as a servant of the one to whom he is loaned, although he remains in the general employ of the one who loaned him. (Paragraph four of the syllabus in *Halkias* v. *Wilkoff Co.,* 141 Ohio St., 139, approved and followed.)" *Giovinale* v. *Republic Steel Corp.,* 151 Ohio St., 161, 84 N. E. (2d), 904.

The County does say, however, that no liability can attach to it because the destruction of the grader took place while it was being used in the repair of a public road, and hence, while the County was engaged in a governmental function.

It must be remembered that there was express statu-

tory authority to enter into the agreement the County made with Falbo. We are not confronted with the question of the liability of a governmental agency for tort.

We do have, however, the question as to whether a County, in the leasing of chattel property, has assumed the ordinary liability which attaches to a bailee to protect such property from destruction by the negligent act of its servants.

The claimed liability in the instant action arises out of contract, while the usual case of governmental immunity from liability arises out of a tort committed by the servant of the governmental agency.

Shall contracts lawfully and properly made by a County be interpreted in any other manner than the manner in which similar contracts are interpreted between individuals? We do not think so, for, in the instant case, no question can arise but that the contract of lease of the grader was authorized and properly entered into between the parties. Hence, the same duties and liabilities attach to this agreement as would arise in the case of any other similar contract when made between private persons.

The responsibility lawfully assumed in the instant case was, not to the general public, but to a specific individual, the bailor Falbo.

In the case of *Commissioners of Belmont County* v. *Ziegelhofer,* 38 Ohio St., 523, wherein a claim was made against a county and the question arose concerning the procedure to be used to enforce such claim, the Supreme Court, in discussing the liability of a county, said, at pages 528 and 529:

"In the case at bar, the liability of the county, if any existed, was founded on, and arose out of a contract, and not by virtue of a statute creating such liability. The statute confers upon the commissioners, the power

to contract with reference to the subject matter. In the exercise of this corporate power, they can create a liability against the county.

"When such a contract is made within the scope of the authority conferred, the obligations arising therefrom, are to be determined by common law principles, in the absence of statutory provisions to the contrary. The right is not founded on a statute, but on a contract made by a *quasi* corporation.

"* * *.

"Here the claim is founded upon contract, and grows out of the corporate liability of the county, for the official acts of the board of county commissioners. In this respect, the rights of persons contracting with the commissioners, and the liability of the county on their contracts, are of the same nature as the corporate liability of private corporations. In either case, the capacity to contract is derived from the statute, but the liability to others, arises from the acts of those authorized to bind the corporate body."

See, also, *Bates & Rogers Const. Co.* v. *Board of Commrs. of Cuyahoga County,* 274 F., 659, at p. 663.

We recognize that a county is a political division of the state, organized as part of the machinery of government, and as such acquires certain immunity from liability. A county can exercise only such powers as are expressly conferred on it by the Constitution and statutes of the state, but it also has such powers as arise by necessary implication from those expressly granted to secure the performance of the duties imposed on it by law.

Certainly, a part of the power to lease road grading equipment would include power to accept the duty to return such property unharmed at the expiration of the lease.

A case involving the principles set out herein has

been called to our attention, and we believe its reasoning to be sound. This case is *Williams* v. *Board of County Commissioners,* 61 Kan., 708, 60 P., 1046, the first pragraph of the syllabus of which says:

"1. A county which, lacking a court house, rents a building from a private individual for county purposes, impliedly obligates itself to the lessor for carefulness and prudence in the use of it, and may enter into a written agreement of lease containing the ordinary covenants against waste, etc., and if, through the negligence of the officers charged with the duty of caring for the premises, the building is destroyed by fire, the county is responsible in damages for its value."

The Kansas Supreme Court further said:

"The defendant in error urges that the claim of liability against it must rest upon the covenants against waste, etc., contained in the lease, and that the statutory permission to provide suitable rooms for county purposes does not authorize the making of such covenants. In our judgment this contention is without force. Authority to contract with private persons for buildings for county purposes is an authority to enter into the ordinary agreements of lease. It is an authority to stipulate upon the same terms that private individuals ordinarily stipulate for the occupancy of leased premises. But over and beyond this contention, and independently of any of the special covenants of the lease, the relation of landlord and tenant begat the obligation to care for the leased premises with ordinary prudence and carefulness, and begat the obligation to respond in damages for their negligent destruction."

We therefore determine that the County, having lawfully entered into the bailment contract for, or lease of, the grader, was, by that agreement, charged with the responsibility of returning such grader to the bailor-lessor in its original condition, less reason-

able wear during the period of the lease. Upon a failure to so return this property, because of its destruction due to the negligence of the agents of the County, the County became liable to the lessor for its fair and reasonable value in the condition in which the County agreed to return it.

We have examined all other claimed errors, and find none prejudicial to the rights of the appellant.

*Judgment affirmed.*

STEVENS, P. J., and DOYLE, J., concur.