McMichael, County Auditor, *v.* Van Ho, County Engineer, et al.*

[Cite as McMichael, Auditor, v. Van Ho, County Engineer, 8 Ohio Misc. 281.]

*Final order entered September 9, 1966. No appeal taken.

(No. 19513—Decided August 15, 1966.)

Common Pleas Court of Paulding County.

*Mr. John F. DeMuth,* prosecuting attorney, for plaintiff.
*Mr. Ralph G. Marshall,* for defendants, The Bridge Construction Co., The Ohio Bridge Corporation and Superior Steel Company.
Earl W. Van Ho, County Engineer, Roy S. Johnson, Donald B. Parker and Joe Williamson, Board of County Commissioners, *in propria persona.*

## I.

HITCHCOCK, J. In this action for declaratory judgment plaintiff, the Auditor of this county, asks if the County Engineer has proceeded lawfully to reconstruct, by force account, the four-span bridge over the Auglaize River just east of the town of Charloe in Brown Township. Defendants are the County Engineer, Earl W. Van Ho; the Board of County Commissioners: Roy S. Johnson, Donald B. Parker, and Joe Williamson; and these corporations of Cambridge, Ohio: The Bridge Construction Co., The Ohio Bridge Corporation, and Superior Steel Corporation. All defendants have voluntarily entered their appearance; the Engineer has filed an answer joining in plaintiff's prayer for declaratory judgment; and the corporate defendants have filed briefs.

The Auditor's apprehension apparently stems from the syllabus of *Pincelli* v. *The Ohio Bridge Corporation* (1966), 5 Ohio St. 2d 41, 213 N. E. 2d 356, 34 O. O. 2d 55, reading:

"The requirements for competitive bidding on contracts for the erection, alteration or repair of county bridges by private contract, set forth in Section 153.31, et seq., Revised Code, are mandatory, and a contract made without compliance with

such sections is void. (*Buchanan Bridge Co.* v. *Campbell et al., Commrs.*, 60 Ohio St. 406, approved and followed.)[1]

If this court could agree that this syllabus stated the law in the circumstances here, it would simply answer the auditor's question with the one small word, "No." This court, however, cannot agree for the reason that the same authority in *Williamson Co.* v. *Radich* (1934), 128 Ohio St. 124, 190 N. E. 403, 40 O. L. R. 646, has also said in syllabus:

"1. The syllabus of a decision of the Supreme Court of Ohio states the law of Ohio, but such pronouncement must be interpreted with reference to the facts upon which it is predicated and the questions presented to and considered by the Court."

As this *Williamson case* deals with basic principle rather than one specific fact situation, this court deems it controlling here, being unable to find any facts set out in *Pincelli*, either in the opinion of the Supreme Court by Judge Paul W. Brown (which causes me no little distress as he is both friend and law school classmate with whom I rarely disagree) or in the courts below laying any foundation for any wide application of the rule stated in the syllabus. See *Pincelli* v. *The Ohio Bridge Corporation* (1965), 1 Ohio App. 2d 342, 204 N. E. 2d 696, 30 O. O. 2d 348; and *Pincelli* v. *The Ohio Bridge Corporation* (1964), 94 Ohio Law Abs. 165, 198 N. E. 2d 483, 26 O. O. 2d 460.

The judgment in *Pincelli* granting plaintiff taxpayer relief by injunction denying The Ohio Bridge Corporation compensation is obviously correct for the reason that it was a fact there that the Auditor of Athens County at no time before the work was done, received the estimate or made the certificate required by that part of Section 5705.41 of the Revised Code, reading:

"No (county) * * * shall:

"* * *

---

[1]No doubt it is proper to presume that, unless otherwise specifically provided for, public contracts are let pursuant to the provisions of Sections 153.31, *et seq.*, of the Revised Code. My examination of the statutes and opinions in *Pincelli* lead me to suspect that highly talented, artful and sophisticated counsel representing non-altruistic interests have, by discussing matters not necessarily in issue, misled the Supreme Court to formulate a rule in syllabus much broader than the facts of the case required. Moreover, I perceive that the *Buchanan Bridge Co.* case, decided in 1899, is completely irrelevant to any consideration of acts properly done under the authority of a new and different statute passed 18 years later.

"(D) Make any contract *or give any order* involving the expenditure of money unless there is attached thereto a certificate of the fiscal officer of the * * * (county) that the amount required to meet the same, or in the case of a continuing contract to be performed in whole, or in part, in an ensuing fiscal year, the amount required to meet the same in the fiscal year in which the contract is made, has been lawfully appropriated for such purpose and is in the treasury or in process of collection to the credit of an appropriate fund free from any previous encumbrances. *Every such contract made without such a certificate shall be void and no warrant shall be issued in payment of any amount due thereon.* (Emphasis supplied) * * *" (which language is followed immediately by provision for a late certificate in certain circumstances)

* * *

"In any case in which a contract is entered into upon a per unit basis the head of the department . . . for whose benefit the contract is made shall make an estimate of the total amount to become due upon such contract, which estimate shall be certified in writing to the fiscal officer. * * * Such a contract may be entered into if the appropriation covers such estimate, or so much thereof as may be due during the current year. In such a case the certificate of the fiscal officer based upon the estimate shall be a sufficient compliance with the law requiring a certificate.

"Any certificate of the fiscal officer attached to a contract shall be binding upon the * * * (county) as to the facts set forth therein. Upon request of any person, firm, or corporation *receiving an order* or entering into a contract with any * * * (county), the certificate of the fiscal officer shall be attached *to such order* or contract. "Contract" as used in this section excludes current payrolls of regular employees and officers. (Emphasis supplied)[2] * * *."

[2]As was said by Guernsey, J., in *Allen* v. *Commissioners* (1934), 49 Ohio App. 249, 17 Ohio Law Abs. 670, 197 N. E. 138, 3 Ohio Opinions 193; re General Code Section 5660, predecessor of Section 5705.41, Revised Code, at page 253 of the official reporter where the sanitary engineer employed by county commissioners for a sanitary district begun but not completed sought judgment for his pay:

"The sole question raised by the demurrer is whether the second amended petition states a cause of action in view of the fact that there

Consequently, as whatever was done by the Athens County Engineer and Auditor in *Pincelli* was, by specific statutory decree "void," nothing done there could possibly be sufficient to legally obligate the county, by either contract or force account, I find the syllabus of the Supreme Court in *Pincelli* would be wrenched out of context and misapplied if taken to mean that force account obligations required bidding, but it is no doubt a correct statement of the law as to contracts undertaken pursuant to provisions of Sections 153.31 *et seq.*, of the Revised Code of Ohio.

Section 5543.19, however, is no less a part of the Ohio statutes now known as the Revised Code, and has been, without change, since its enactment in 1917, except for the insertion of 6 additional commas, and eliminating the word "surveyor" and replacing it with the word "engineer" which, as best I can perceive, could not possibly affect the meaning. This section, in pertinent part, now reads:

"The county engineer may, when authorized by the board of county commissioners, employ such laborers and teams, lease such implements and tools, and purchase such materials as are necessary in the construction, reconstruction, improvement * * * or repair of * * * bridges * * * by force acount."[8]

---

is no allegation to the effect that the auditor had made the certificate required by the provisions of Section 5660, General Code, before said contract was entered into." and

Despite clear showing of moral obligation and an attempt to bring his case within various other sections, plaintiff's efforts were held unavailing and the court concluded: (at p 261)

"The fact that at the time of the execution of the contract there was money in funds in the hands of the Treasurer of Auglaize County to pay for the same did not in legal effect dispense with the certificate. *City of Findlay* v. *Pendleton* (1900), 62 Ohio St. 80, 56 N. E. 649, 43 W. L. B. 203.

"We therefore hold that the contract upon which the plaintiff bases his claim comes within the purview of Section 5660, General Code, requiring the certificate of the auditor to validate the contract, and as there is no allegation in the petition showing compliance with such section the petition does not state a cause of action."

This court doubts not that this was then and continues to be a correct statement of the law of Ohio and is firmly based upon statutory provisions bottomed upon a policy to maintain public fiscal responsibility.

[8]Interestingly enough, on this same 20th day of March, 1917, as a part of what was then known as the White-Mulcahy Act (Amended House Bill No. 300; 107 O. L. pp 69-142, inclusive), there was enacted General Code

## II.

So the first problem for the court here is to determine what, if anything, this section means, particularly the words "by force account." Judge Bolin, in the Common Pleas Court, in *Pincelli,* concluded that the words "force account" "* * * had a definite and fixed meaning at the time the legislation was enacted first using the term in 1917. And this court feels that the meaning is the same wherever used in the statutory law of Ohio." (See 94 Ohio Law Abs. 176, 198 N. E. 2d 489, 26 O. O. 2d 465.) And this despite the fact that, earlier in his opinion,

Section 3373, a large part of which continues to exist as Section 5575.01 of the Revised Code; and also General Code Section 6948-1, which continues today as Section 5555.71 of the Revised Code, both with little change. As now in the Revised Code these sections in part read:

"Section 5575.01. *Maintenance and repair of roads by contract or force account.* In the maintenance and repair of the roads the board of township trustees may proceed either by contract or force account. * * *

"* * * If the board deems it for the best interest of the public it may, in lieu of constructing such road by contract, proceed to construct the road by force account. Where the total estimated cost of the work exceeds three thousand dollars per mile, the board shall invite and receive competitive bids for furnishing all the labor, materials, and equipment and doing the work as provided in Section 5575.02 of the Revised Code, and shall consider and reject them before ordering work done by force account. When such bids are received, considered, and rejected, and the work done by force account, such work shall be performed in compliance with the plans and specifications upon which the bids were based.

"All force acount work shall be done under the direction of a member of the board or superintendent."

Section 5555.71. *Construction by force account; estimate; procedure.*

"Before undertaking the construction, reconstruction, widening, resurfacing, repair, or improvement of a road, the board of county commissioners shall cause to be made by the county engineer an estimate of the cost of such work, which estimate shall include labor, material, freight, fuel, hauling, use of machinery and equipment, and all other items of cost. The board may, in lieu of constructing such improvement by letting the work by contract, proceed by force account. When the total estimated cost of the work exceeds six thousand dollars per mile, the board shall invite and receive competitive bids for furnishing all the labor, materials, and equipment and doing the work, as provided in Section 5555.61 of the Revised Code, and shall consider and reject such bids before ordering the work done by force account. When such bids are received, considered, and rejected, and the work done by force account, such work shall be performed in compliance with the plans and specifications upon which the bids were based. This section applies to new construction and repair work."

he said: "A very careful search of law dictionaries, words and phrases, decided cases, and other states (which were not found) did not help the court with the definition of what was meant."

Neither the Court of Appeals nor the Supreme Court in affirming the judgment of the Common Pleas Court, defined what is meant by the term "by force account."

Words & Phrases, Vol. 17, 1958, contains this one reference of judicial comment announced in 1907, on the words, "force account":

"Where the assignee of a construction contract was not paid in accordance with the contract price, but hired men and teams to do the work by the day and was paid on the basis of the time they were employed, it was a "force account." *Hottel* v. *Poudre Valley Reservoir Co.*, 92 P. 918, 920, 41 Colo. 370."

Thereupon, the court explored the resources of The Library of the College of Law, The Ohio State University, but could find no other judicial discussion of the terms "force account" or "by force account," in the American Digest through its Second Decennial Edition, 1916. Even the above paragraph from Words & Phrases does not appear in the digest.

In Ohio Roads and Bridges, by Wm. M. Rockel, W. H. Anderson Co., 1916, there appears this statement:

"Section 350. Letting contracts, etc. What has heretofore been said concerning road improvements by the trustees under Section 3298-4, Section 123 et seq., and by commissioners under Section 6945, Section 292, is applicable here. Suffice here to say that the statute should be strictly followed.

"As to advertisement, see Section 124.

"As to bids, see Section 124.

"As to form of bond, see Section 126.

"As to form of contract, see Section 126.

"If the work amounts to less than $200, then it may be let without advertisement, and without competitive bidding; however, in a good many cases, even where it is under $200, it may be advisable to advertise by posters and let it to the lowest and best bidder.

"In all instances the trustees or commissioners should require a written bid, and should then formally approve the same by entry on their journal. Before making any contract

it should be approved by the county highway superintendent.

"By 'force account,' as distinguished from contract, is meant the direct employment of labor and the direct use of the necessary means for completing a given work. The commissioners may determine whether they will do the work by letting it out on contract or otherwise through the county highway superintendent."

Thus it clearly appears that one competent and informed commentator, after the enactment of the 1915 version of Section 7198, General Code, clearly perceived that public works were then authorized to be done (1) following traditional public bidding contract procedure and (2) following procedure "by force account." Obviously some confusion in terms has arisen because the public obligations incurred in each case, though different, are both still contractual in nature.

In Webster's New International Dictionary of the English Language, 1909, G. & C. Merriam Company, a work with which the members of the General Assembly in 1917 were presumably familiar, we find among the numerous definitions of the word "force"—"Power to * * * impose obligation * * *." Also, Rawle's Revision of Bouvier's Law Dictionary, 1897, lists as two meanings of the word "force"—"* * * validity, binding effect."

It therefore seems reasonably certain that when the Legislature in 1917 enacted Section 7198, General Code (now Section 5543.19, Revised Code), it used the words "by force account" in the sense that the surveyor (now engineer) could and would proceed as might any intelligent businessman to do the work found necessary and desired, and previously authorized by the commissioners, as on an account without any bids or bidding whatever and the county would be legally obligated to make payment therefor.

The court next examined every one of the 26 annotations to Section 5543.19 of the Revised Code, now appearing in Page's Ohio Revised Code Annotated and found that three are from *Pincelli* (2 by the Common Pleas Court and one by the Court of Appeals); and 22 (all but 1) of the remaining twenty-three annotations are from Opinions of the Attorney General of Ohio. The only judicial comment as to what "by force account" means is taken from the Common Pleas opinion in *Pincelli*.

Reviewing then the opinions of the Attorney General the court finds that all but three consistently agree with the conclusion this court has reached as to what the Legislature accomplished when it adopted the original predecessor to Section 5543.19 of the Revised Code of Ohio.

Summarizing the narrow and minority view of these opinions, with which this court disagrees, are found:

1918 O. A. G., Vol. 1, p. 459, opinion by Attorney General McGhee answers a specific question saying "* * * it is my opinion that the provisions of Section 7198, supra, do not confer upon the county surveyor the authority to construct bridges by force account, irrespective of what the cost of the construction might be." And this despite the express language of the statute and where the commissioners had duly authorized the surveyor to proceed by force account. For this court this is an incredible opinion which should be forgotten, as "* * * a flower is forgotten, as a fire, as a footfall in a long forgotten snow."

1919 O. A. G., Vol. 1, p. 450, opinion by Attorney General Price concludes that force account claims cannot be paid on the warrant of the county auditor "without the county commissioners first having allowed said claims" because not within the exception "authorized to be fixed by some other person" as provided in Section 2460, General Code (now Section 307.55 of the Revised Code). This court finds this also to be an opinion flying in the face of the plain meaning of plain words used in the statute.

1927 O. A. G., p. 1100, opinion by Attorney General Turner the first paragraph of the syllabus of which reads:

"1. A county surveyor is not authorized by the terms of Section 7198, General Code, or otherwise, to enter into a contract with a bridge company for the construction of a bridge in which the company is to employ all necessary labor, purchase and transport all material not furnished by the county, furnish the services of the various departments of such company, furnish a foreman, protect the county against all claims for infringement of any patent or any devise or process used in the structure and guarantee the work for one year after completion, for which the company is to be paid a stated sum per day and be reimbursed for the salary and necessary expenses of the foreman and the actual amount of all expenditures, including

materials and labor. Such an arrangement does not constitute the doing of work by force account, but is in effect a contract for the construction of a bridge."

The court has been greatly intrigued that this and the prior bridge opinion issued despite the statutory language reading, "The county surveyor may when authorized by the county commissioners employ such laborers and teams, lease such implements and tools and purchase such material as may be necessary in the construction * * * of * * * bridges * * * by force account." This court finds not the slightest indication that the Legislature prohibited the surveyor from exercising the authority granted him in this section, depending upon whether he proceeded directly or indirectly, or expended a small or large amount of money.

Summarizing the broader and majority view, with which this court agrees, are the following:

1917 O. A. G., Vol. 3, p. 2310, opinion by Attorney General McGhee finds that under Section 7198, General Code, the board of county commissioners may authorize the surveyor to do public work "by force account" but that no bills incurred may be paid unless the county auditor has made the certificate that funds are available or in process of collection for the proper account and not otherwise appropriated; this certificate must exist before the surveyor "enter(s) into any contract, agreement or obligation involving the expenditure of money." This is the opinion of the Attorney General of Ohio who was such on March 20, 1917, the day this legislation was passed, and who may well have thought the Legislature was somewhat daft in so doing.

1921 O. A. G., Vol. 2, p. 822, opinion by Attorney General Price. This opinion contains an excellent and accurate review of the comprehensive 1917 highway act, popularly known as the White-Mulcahy Act (107 O. L. 69—passed March 20, 1917), which extensively revised the comprehensive prior act, popularly known as the Cass Act (106 O. L. 574—passed May 17, 1915), in respect to county work done "by force account," and this court expressly approves the first two paragraphs of the syllabus of this opinion as a correct statement of the Ohio law at that time, to-wit:

"1. In the construction or reconstruction, as well as the repair, of a bridge by a county, the method commonly known as force account may be followed, whatever may be the estimated cost of the project,—that is to say, that under Sections 7200 and 7214, G. C., the county commissioners may purchase the necessary machinery, tools, equipment and materials, and under Section 7198, G. C., authorize the county surveyor to employ the necessary teams and labor; or the commissioners may, by virtue of the last named section, authorize the county surveyor to purchase the materials, lease the implements and tools and employ the labor necessary for the project. (Opinions Attorney General 1917, Vol. III, p. 2332; and 1918, Vol. 1, p. 459, not followed in so far as they hold that there is a distinction between construction and repair.)

"2. Said Sections 7198, 7200 and 7214 do not repeal by implication Sections 2343 to 2361, G. C., providing among other things for the construction and repair of bridges upon the competitive bidding plan. The two groups of sections provide distinct methods of bridge construction and repair; and when one group is resorted to for procedure, it must be followed to the exclusion of the other."

Attorney General Price also recommended adherence to the competitive bidding system unless in particular instances such was "either impractical or against the public interest." But there was then no statutory language requiring such findings before resorting to public work "by force acount," nor can this court find any such language today.

1921 O. A. G., Vol. 2, p. 830, opinion by Attorney General Price. The court finds this opinion to be a generally correct statement of Ohio law at the time, the syllabus of which reads:

"1. In case county commissioners desire to do road or bridge work by force account, they must, before making purchases for the purpose (Sections 7200 and 7214, G. C.), and before authorizing the county surveyor to make purchases and employ labor and teams for the purpose (Section 7198, G. C.), cause the county surveyor to prepare plans, specifications and estimates (Sections 2792 and 7187, G. C.). This is true without regard to the costs of the work.

"2. The requirements of Sections 5660 and 5661, G. C., are

applicable to the purchases of materials, tools, equipment and supplies, and to the employment of teams and labor under authority of Sections 7198, 7200 and 7214, G. C.''

1927 O. A. G., p. 466, opinion by Attorney General Turner, states that when authorized by the commissioners to proceed by force account the surveyor may employ laborers and teams as may be necessary and that the word ''laborers'' in Section 7198, G. C., should be liberally construed to effect the purpose intended and ''includes such foremen, laborers, engineers, mechanics, and other persons as may be necessary efficiently to accomplish the road work in question.''

1931 O. A. G., No. 2996, opinion by Attorney General Bettman, concludes that the commissioners have authority to authorize the surveyor, but not the township trustees, to construct county roads by force account, and that when the commissioners have authorized the surveyor to repair county roads by force account, the surveyor has the exclusive authority to hire the necessary labor therefor.

1931 O. A. G., No. 3139, opinion by Attorney General Bettman, holds that when the commissioners have authorized the surveyor to construct or improve a road by force account under Section 7198, G. C., the surveyor has sole power to contract with laborers with reference to the construction of such improvement, and the approval of the county commissioners is not required as a condition precedent to the payment of such wages.

1931 O. A. G., No. 3139, opinion by Attorney General Bettman, is to the effect that the exercise of the power to reconstruct a bridge by force account, authorized by Section 7198, G. C., is not dependent upon there being an emergency, nor is it limited by Section 6498-1, G. C., applying to roads (unless possibly some bridge work was in conjunction with a road improvement) and requiring bids where the estimated cost of a proposed road improvement exceeds $3,000 per mile.

1933 O. A. G., Vol. 1, p. 311, opinion by Attorney General Bricker declares that the surveyor has no interest in what the county commissioners purchase, except for that work which is authorized to be done by force account.

1935, O. A. G., No. 4767, opinion by Attorney General Bricker says that when the commissioners authorize the surveyor to proceed with a road and bridge program by force account pur-

suant to Section 7198, General Code, they have not authorized him to purchase road machinery. This opinion seems to follow the plain language of the statute as to this and other incidental matters.

1935, O. A. G., No. 4767, opinion by Attorney General Bricker. The court is in general agreement with this 23 page opinion and approves specifically these 2 paragraphs of the syllabus of this opinion:

"10. When the county surveyor has been fully authorized to proceed under Section 7198, General Code, purchases made, contracts entered into for labor, leasing of machinery or materials may be approved by the surveyor and paid by the county auditor without consideration of the board of county commissioners.

"11. In reference to proposed contracts, an "estimate" has reference to an approximation of the amount of material for items that will be required in order to construct a given project and an approximation of the cost thereof. On the other hand, the use of the word with reference to estimates made by a surveyor or engineer in charge of a project after the contract is awarded, has reference to fixing as a mathematical certainty the amount due to a contractor upon a given project in view of the contract price and the state of completion of the work."

1939 O. A. G., No. 1494, opinion by Attorney General Herbert. This opinion has to do with roads and is limited to answering specific questions, primarily relating to minimum and prevailing wages required by Sections 17-3 and 17-5, General Code (now Sections 4115.03 and 4115.06, Revised Code). This court agrees with this part of the sylalbus of the opinion:

"5. When the estimated cost of the improvement of a county highway is less than three hundred dollars, and is being made through 'force account' under authority of Section 7198, General Code, and related sections, the county engineer has the duty of determining the wages to be paid the mechanics and laborers employed thereon.'"

---

'General Code Section 17-3 then in part provided: "* * * The term 'construction,' as used in this act, shall mean any construction, reconstruction, improvement, enlargement, alteration or repair of any public improvement fairly estimated to cost more than three hundred dollars. * * *" Section 4115.03, Revised Code, now provides: "(B) 'Construction' means

1950 O. A. G., No. 1498, opinion by Attorney General Duffy, holds that under the provisions of Section 7198, General Code, the county commissioners may authorize the engineer to construct a bridge "by force account" and such power includes the right to purchase and construct a prefabricated or welded bridge if in *the judgment and discretion of said officials* the same is for the benefit of the county, and that there are no restrictions upon the estimated cost where one proceeds by force account. (Emphasis mine.)

1955 O. A. G., No. 5275, opinion of Attorney General O'-Neill, is to the effect that when the county commissioners elect to authorize the engineer to perform work authorized to be performed by force account in Section 5543.19 of the Revised Code, the authority to carry out such construction is vested solely in the county engineer and that when commissioners proceed neither to comply with Sections 153.31 *et seq.,* of the Revised Code, or pursuant to Section 5543.19, Revised Code, they proceed illegally. This court is unable to perceive anything incorrect in this opinion.

In 1961 O. A. G. No. 1976, opinion by Attorney General McElroy holds that where the commissioners have authorized the engineer to maintain and repair county roads by force account and the road equipment is stored in a county garage and another building, both used for that purpose only, and both county property, the engineer, not the commissioners, has the authority to employ mechanics and night watchmen at such buildings.

In 1964 O. A. G. No. 1183, opinion by Attorney General Saxbe, states in syllabus:

"1. If the total estimated cost of resurfacing a county road does not exceed $6,000.00 per mile, the Board of County Commissioners may elect to proceed, either under the provisions of Section 5555.61, Revised Code, or of Section 5555.71, Revised Code.

"2. If the total estimated cost of resurfacing a county road

---

any construction, reconstruction, improvement, enlargement, alteration, or repair of any public improvement fairly estimated to cost more than two thousand dollars."

does not exceed $6,000.00 per mile and the Board of County Commissioners elects to proceed by force account, the provisions of Section 5543.19, Revised Code, are applicable.''

The court agrees that these are correct statements of the Ohio law, and approves both the reasoning and the brevity of the opinion written in support thereof.

In *Home Ins. Co. v. Bd. of Commissioners* (1949), 88 Ohio App. 91, 97 N. E. 2d 231, 44 O. O. 31 (app. dis. 153 Ohio St. 538) the Court of Appeals for Lorain County found that the county was a bailee for hire of a road grader (at $56 per day) and responsible as a bailee for its almost complete destruction occasioned by the negligence of the operator hired with the grader to work under the supervision of the county engineer proceeding under authority to act ''by force account.'' At page 93 of the official reporter, the court said:

''The County, by express statutory provisions, is permitted to lease equipment as was done in the instant case. See Section 7198, General Code.''

This court has no difficulty in concurring wholeheartedly in both the judgment and opinion of the court which is written by Judge Hunsicker.

This concludes this court's review of the present annotations to Section 5543.19, Revised Code, other than those from the *Pincelli* case.

As this court understands fellow Common Pleas Judge Bolin in *Pincelli*, he gives no effect to the use and the adminstrative interpretation and understanding of this section over the years. He finds the Legislature in 1913 repealed the General Code sections of long standing ''* * * where the county highway superintendent was given authority to *hire* labor, teams, implements, and tools to build and repair roads and highways, which he had prior to 1913 in being able to call labor for two days work each year and requiring them to bring their teams and carts, wagons and tools and the right to go on land and take timber and gravel and sand and stone.'' It then passed the comprehensive Cass Act (106 O. L. 574) on May 15, 1915, a part of which at page 616 provides:

''Section 7198. Section 155. The county highway superintendent may, with the approval of the county commissioners or

township trustees, employ such laborers, teams, implements and tools, and purchase such material as may be necessary in the performance of his duties."[5]
which section was amended by the White-Mulcahy Act passed March 20, 1917, as above mentioned. Judge Bolin concludes:

"The court feels that *force account* from this background means the county highway superintendent or surveyor or county engineer was to do the work on the roads from the labor he could hire locally and ready at hand and available to him, and with the tools and equipment that he could hire and the materials available. In other words what labor, tools, equipment and materials that were readily available to him he could hire, rent and buy, and under his supervision he could construct, reconstruct, improve, maintain roads, bridges and culverts (by force account)." 94 Ohio Law Abs. 175, 198 N. E. 2d 488, 26 O. O. 2d 465, and that:

"From a study of all the statutes and most important those passed in the same general act of 1917, it is abundantly clear the Legislature intended that *force account* meant that the county would act as its own contractor and perform the various phases of the construction by using labor employed by the county engineer, and using the equipment leased by the county engineer, with materials bought by the county engineer or one of his deputies directly under the county engineer. No stretch of the imagination can read into the words of Section 5543.19, Revised Code, that the county engineer may shop around and enter into a contract for some contracting firm to perform the whole contract for a total set figure arrived at by the county engineer." 94 Ohio Law Abs. 178, 198 N. E. 2d 490, 26 O. O. 2d 466.
And this despite the fact that Section 7198, General Code, as passed March 20, 1917, has continued without material change to this date.

It seems to me that the historical facts leading up to the 1917 enactment of Section 7198, General Code, influenced Judge Bolin to interpret in 1964—forty-seven years later—the words

---

[5]"From the court's own experience there arises a strong suspicion that this section lasted only two years because it proved cumbersome in practical effect and burdened public authority with all the difficulties of doing business through committees.

"by force account" in a narrow, parochial way, in a case where there was no need for their interpretation. The same historical facts influence me to arrive at a contrary conclusion in a factual situation where I am required to define "by force account."[6] The code sections repealed in 1913 have never been

[6]In the Law Library of The Ohio State University the court has discovered Bulletin No. 33 of the Ohio Good Roads Federation, dated August 1, 1917, and entitled, "Forms and Suggestions for Legislative Procedure for Road Improvements by County Commissioners." This passage from pages 46, 47 of said pamphlet shows that a group with a vital interest in the 1917 Act believed that "by force account" referred to a new method of building public roads, to-wit:

"Too much emphasis cannot be placed, especially at this time, on the provisions of Section 6948-1, General Code, this being a supplementary section found in the White-Mulcahy Act. The section provides that if the county commissioners deem it for the best interest of the public they may, in lieu of constructing an improvement by contract, proceed to construct the same by force account. This provision is applicable not only to maintenance and repair operations, but also to work in the nature of construction, reconstruction or improvement; and it is applicable as well where all or some part of the cost is to be specially assessed as it is where the entire cost is to be paid by general taxation.

"Under the provisions of this section the county commissioners after the necessary funds have been provided, either by the collection of taxes or by a bond issue, may, instead of letting a contract for the work, purchase the necessary machinery, tools and other equipment as authorized by Section 7200, General Code, utilizing, of course, any machinery, tools, and equipment owned by the county and not in use elsewhere, or they may authorize the county surveyor to lease the necessary implements and tools as authorized by Section 7198, General Code; the commissioners may purchase the necessary material, or authorize the county surveyor to purchase the same; and they may authorize the county surveyor to employ the necessary laborers and teams. If this method is adopted the work will then be done under the supervision and direction of the county surveyor, he using the machinery, implements, tools, material, labor and teams provided in the manner above set forth. Bills for machinery, implements and tools which will not be worn out in the construction of the particular improvement should be paid from the general county road fund, and all other bills should be paid from the specific fund provided for the particular improvement.

"In view of unsettled conditions due to the war, it is believed that the above method of procedure offers unusual advantages at the present time. It might be possible to lease on favorable terms the equipment of a contractor who does not desire to bid in view of unsettled business and labor conditions, and to utilize in large measure the organization of such contractor.

"The above outline of procedure on a force account basis also suggests

reenacted. I conclude that they had, in the opinion of the Legislature, outlived their usefulness.

Section 7198, General Code, as enacted in 1915 was replaced two years later as part of a comprehensive highway act and continues today, materially unchanged forty-nine years later, as Section 5543.19, Revised Code. I can only conclude that it has accomplished its purpose and has worked so well for nearly five decades that the Legislature has not amended it; and for forty-seven years no court was asked to construe it!

In these circumstances, unless and until this court be reinstructed by higher authority in its understanding of legislative, judicial and executive functions, it cannot be true to its oath of office and hold that a statute with such impressive credentials of enactment and use has suddenly been repealed or rendered nugatory in 1966 by Supreme Court syllabus in a case where the facts could not directly raise the issue. Would that with equal clarity the people of this state had erased the constitutional prohibition against increases in judicial salaries during term and the Legislature had increased them. But if they had, I suppose this cause would likely be now determined by a wiser and better judge. But in either supposed event, I find it difficult to believe that there would now be judicial quibbling as to what either the people or Legislature had accomplished, because today judges ride in Mustangs and not in buggies.

For me the least important word in Section 5543.19, Revised Code, is "teams," which word I find merely descriptive of the "manned horsepower for construction purposes" most widely and commonly available at the time the original version was enacted. The other words "employ such laborers," "lease such implements and tools" and "purchase such materials as are necessary" are nowhere limited, and I conceive that if the word "teams" had never been in the statute, its meaning and effect would not necessarily have been affected. If the commissioners have no confidence in their engineer as a bargainer and contractor, even though he have proper technical qualifications, they are free to exercise their judgment and decline to authorize

what experience has shown to be the most satisfactory methor of handling all minor maintenance and repair operations. It is believed that a large part of such work, even under normal conditions, can best be handled in the manner above suggested."

him to do any work by force account. In such event, I perceive the commissioners would be required to proceed pursuant to the traditional contract by bid procedure, as stated by the Supreme Court in its *Pincelli* syllabus. But as it is, the commissioners have this choice.[7]

It does seem to me that a great stretch of imagination is required to suppose that more than a few, if any, members of the 1917 General Assembly foresaw the technological revolution in the manner of doing construction work, of either public or private nature, which had just begun and was about to develop in our land. My study of this statute and its history leads me to believe that it contains nothing prohibiting any engineer as time went by from utilizing better substitutes for anything authorized and the statute remained in effect. In making this interpretation I have asked myself: What difference does it make because horses have become passe and been replaced by motor horsepower? What difference does it make because today the implements and tools used are vastly different in design, construction, and the work for which they are used? What difference does it make that new materials have been invented and may be acquired in the raw, semi-fabricated, fabricated or pre-fabricated state and are best utilized, in the engineer's

---

[7]This conclusion to me seems certain because a thorough examination of the Supreme Court's opinion in *Pincelli* fails to disclose any likelihood of disagreement with or imminent departure from the rule of *State, ex rel. Jaster* v. *Common Pleas Court* (1936), 132 Ohio St. 93, 5 N. E. 2d 174, 7 Ohio Opinions 204, declaring that:

"1. Where a later specific statute is enacted on the same subject covered by an existing general statute, without express or implied intention to repeal the existing general statute, such specific statute must be held to have been intended by the Legislature to be engrafted upon the general statute as an exception thereto."
and/or—
this paragraph from the syllabus of *Slingluff* v. *Weaver* (1902), 66 Ohio St. 621, 64 N. E. 574, 47 W. L. B. 463 and 626:

"2. But the intent of the law-makers is to be sought first of all in the language employed, and if the words be free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the law-making body there is no occasion to resort to other means of interpretation. The question is not what did the general assembly intend to enact, but what is the meaning of that which it did enact. That body should be held to mean what it has plainly expressed, and hence no room is left for construction."

judgment, when erected by the specialist employees of a sub-contractor's crew? I am unable to find anything which says that it makes any difference whatsoever, and in my judgment, if this statute is to be amended, the task is properly for the General Assembly of Ohio.

What to me is most important is the public work to be performed and accomplished and the manner of its authorization for which public authority is obligated to pay. My examination of this statute and its history convinces me that there have been few, if any, other Ohio statutes which have been as widely and well understood as this one.

I conclude that when authorized by the county commissioners, the county engineer may contruct or reconstruct a bridge by force account acting as his own general contractor or through one or many sub-contractors without any bids or bidding whatsoever, providing other applicable statutes are observed, and it matters not whether such bridge is over tiny Possum Run at Paulding or the wide Maumee River at Toledo. And I am unable to see any reason, why, even in policy, the judicial department should not so declare it.

As a matter of policy this court is of the opinion that freemen have for centuries acted upon the premise that what is not forbidden is allowed, and that wide observance of this precept is essential to the exercise and enjoyment of the privileges constituting the happy condition known as a free society. This court is loath indeed to restrict anyone, even public officials not in the judicial department, in utilizing their intelligence, judgment and discretion in the performance of their public duties unless it must do so because the Legislature has determined same is required by the public welfare, or there is some condition or state of affairs existing such that most ordinary citizens find abhorent, and it would be monstrous or inequitable to deny relief.

This court is unable to find, either in its library, or that of The Ohio State University, that any scandal has ever been reported in connection with Ohio public works accomplished "by force account!" The fact of this statute's existence and use in Ohio, and the absence of comparative legislation in other states, does excite this court's imagination to the realization that the Ohio General Assembly of 1917 must have been com-

posed of a number of uncommon men with sense enough to make such a common sense procedure available to township trustees and county commissioners for the performance of their public duties. If it is not what they intended, I perceive they builded better than they knew for from over a total of more than ten years residence in six other states I have been unable to observe any place where public revenues are employed more effectively or efficiently than in Ohio.

One needs, however, only to begin to acquaint himself with the legal literature concerning "lowest and best bid," "lowest responsible bid," "a responsible bidder," "bid peddling," "bid shopping," "the rigged bid," and the conduct of the not uncommon "cheapskate bidder" to perceive that the public is not necessarily well served when public officials are forced to require, in every instance, payment for the professional work a number of bidders must employ for the preparation of detailed, complex engineering specifications and finespun contract provisions necessary to competitive bidding. For somehow, directly or indirectly, over the years, I perceive the public must pay for same and it is certain that in many specific instances of road and bridge work, perhaps one half or more, this preliminary work, if always required, would make no more economic contribution toward the final product than the setting of bogus type paid for in *American Newspaper Publishers Assn.* v. *N. L. R. B.* (1953), 345 U. S. 100, 73 S. Ct. 552, 97 L. Ed. 852, 31 A. L. R. 2d 497.

Perhaps my notion of proper policy here is wrong or ill founded or improperly influenced, although I do not think it is. Assuming it might be, I readily admit that I drive across this bridge one or more times nearly every month; that I am the grandson of a township trustee who for the score of years following 1915 helped transform miles of mud roads into firm stone ones; that I am the nephew of two men who built concrete bridges over open drainage ditches in the early 1920's; that I am the son of a man who with team and wagon in the days of my youth hauled stone for township and county roads; and that mentioned work was performed within thirty miles of this court house, mostly in two adjacent counties. Although I knew nothing about force account in the years between 1920 and 1933 I do clearly recall that there were jobs, and "bid jobs," and that the

bid jobs seemed less frequent than the others. In addition, I lived in a neighboring state for six years where I was the official of a large mercantile corporation charged with investigating all manner of unauthorized and abnormal procedures during which time I had a friend, now dead, who was a successful contractor, purveyor of concrete, and manufacturer of concrete products. It does seem to me likely that such associations and experience prevent me from being as naive as I might otherwise be, but I do not see how this prevents me from examining this situation, whole and entire.

No doubt in this day and age citizens must, as has been said, "turn square corners" when dealing with the government but this is not to say they must turn hairpin corners or be run into blind alleys. I perceive that if all were rigorously required to literally comply, in every detail, with every provision of our present statutory labyrinth the practical effect would be to paralyze all manner of public and private activity, even if generally conceded to be beneficial and praiseworthy.

Which leads the court to find that Attorney General Herbert (1939 O. A. G. No. 1494, *supra*) correctly stated that Chapter 4115, Revised Code, pertaining to "Wages and Hours on Public Works," does apply to work done "by force account," by the engineer when duly authorized. This chapter, consisting of Sections 4115.01 through 4115.14, Revised Code, last amended effective November 3, 1965, contains many specific provisions in respect to contracts let through conventional bid procedures, and work done by a subdivision's (such as the engineer) own forces. The sections make no specific reference to work performed "by force account" by anyone, other than by indirection in Section 4115.06, Revised Code, which in part now reads:

"* * * Where a public authority constructs a public improvement with its own forces, such public authority shall pay a rate of wages which shall not be less than the rate of wages fixed as provided in Section 4115.04 of the Revised Code, except in those instances provided for in Sections 723.52, 5517.02, 5555.71, and 5575.01 of the Revised Code * * *."

Looking then to the Revised Code we find these excepted sections titled as follows:

"Section 723.52. *Estimate of cost of construction by force-account or direct labor; procedure when estimated cost exceeds*

*one thousand dollars.* (From the Chapter on Streets and Public Grounds of Municipal Corporations.)

"Section 5517.02. *Estimates; contracts; force account.* (In respect to work done by the director of highways.)

"Section 5555.71. *Construction by force account; estimate; procedure.* (In respect to "road" work done by county commissioners.)

"Section 5575.01. *Maintenance and repair of roads by contract or force account.* (In respect to work done by township trustees.)

So it is clear that Chapter 4415, Revised Code, does not apply to improvements fairly estimated to cost not more than $2,-000 or to work done "by force account" under these four sections, among which Section 5543.19, Revised Code, does not appear. It does seem, however, that as the county commissioners are only authorized to do work "by force account" through the county engineer, Section 5555.71, Revised Code, by indirection does exempt the "road" work done by the county commissioners under Section 5543.19, Revised Code, but work in respect to "bridges and culverts" costing more than $2,000 "by force account" under Section 5543.19, Revised Code, is still subject to the provisions of Chapter 4115, Revised Code, in view of the words "or otherwise" as found in Section 4115.01, Revised Code. Still I am unable to find anything in Chapter 4115, Revised Code, which, fairly interpreted, amends Section 5543.19, Revised Code, or otherwise interferes with work performed pursuant thereto.

Consequently, I hold that if sub-contractors who accept orders for the performance of any labor in the construction or reconstruction of a "bridge or culvert" from an engineer authorized to proceed "by force account," do so in writing which certifies that (1) they have received from the engineer a copy of the generally prevailing minimum wage applicable to the work to be done; (2) that they maintain complete payroll records at a specific address in Ohio and will so maintain them for one year after the work is done; (3) that said records will always be open to inspection to the engineer or official representative of the Ohio Industrial Commission; (4) that in performing the work agreed to be done they will comply with the provisions of Chapter 4115, Revised Code, as herein deemed ap-

plicable; and (5) that should they fail to comply therewith by reason of mistake of law or fact, or any other reason, they will save harmless the county the engineer represents, they will have complied sufficiently with applicable law such that pay for work thereafter performed as agreed may not be denied such subcontractor.

This interpretation permits the real ends of both Section 5543.19 and Section 4115.01 *et seq.*, Revised Code, to be served in every substantial respect without delaying desired and needed public improvements while the cost of living increases with little restraint.[8] Moreover, as a practical matter, it enables prosecuting attorneys and other lawyers to confidently advise their public and private clients without the necessity of resorting to the attorney general for opinion or to the courts for declaratory judgment. If the Legislature wishes to clarify Chapter 4115, Revised Code, in the future, it is, of course, free to use its own judgment in amending it, or any other section within constitutional limits.

Finally, the court realizing that plaintiff is the fiscal officer of the county and responsible for the careful handling of public funds, did consider summoning him and the other county officials who are parties to this action, and inquire into the reasons why behind the facts in this case and whether or not any of them had reason to believe that through the letting of a contract by conventional bid procedure a bridge of the proposed size and quality could be built for less than the estimate herein made. Upon reflection, the court rejected this procedure as being an unwarranted and unjustified inquiry into the *bona fides* of the acts of the public officials involved, in the absence of any reason to believe they have acted improperly. In fact, they are entitled to a presumption of having acted honorably and intelligently in the absence of credible evidence to the contrary.

---

[8]And this consideration is surely not a small or minimal one since the federal government has abandoned the gold standard adhered to until 1933, and has since utilized what is essentially a managed currency whereby a measure of inflation seems to be promoted with the slow speed and certainty of a glacier. Incidentally, this fact may be the chief reason why our Ohio constitutional provisions prohibiting increases in the compensation paid public officials during term, and adopted in 1912 or prior thereto, perhaps no longer fairly operate in respect to the persons affected.

### III

We now consider the facts in this case which, because of the present state of the law, are set out in precise completeness:

On March 18, 1966, the following occurred:

The county engineer made a report on the poor condition of subject bridge to the county commissioners, along with an estimate that it could be reconditioned for $134,814.86, and requested authority "to proceed by 'force account' " to replace the bridge superstructure. Appendix I.

The county commissioners by resolution duly recorded at pages 552 and 553 of Volume 32, of the Commissioners Journal, a public record, authorized the engineer "to proceed by force account" in accordance with the provisions of Section 5543.19 of the Revised Code of Ohio, to construct the improvement . . ." Appendix II.

The county auditor issued to the engineer a certificate "under the provisions of Section 5705.41, Revised Code," of sufficient unencumbered public revenues in an appropriate fund to pay the estimated $134,814.86. Appendix III.

The engineer issued a purchase order, bearing the auditor's certificate of available funds to the Ohio Bridge Corporation for an all welded steel truss bridge, and flooring at a price of $97,980.00. Appendix IV.

A like purchase order was issued to Superior Steel Corporation for piling and reinforcing steel at a price of $3,992.60. Appendix V.

The documents showing the foregoing are set out in Appendix hereto.

In addition the verified petition recites:

"That for the construction of said bridge the defendant, Earl W. Van Ho, as County Engineer, has negotiated with The Bridge Construction Company of Cambridge, Ohio, to rent certain heavy equipment with equipment operators, for a total rental of $26,280.00. That the rental price for such equipment includes the wages of operators of such rented equipment which operators are to be furnished by The Bridge Construction Company.

"That the entire construction is to be done under the supervision of the defendant, Earl W. Van Ho, as County Engineer, and that all labor and machinery necessary for such construc-

tion is to be furnished by the Paulding County Highway Department, except for the aforesaid rented equipment with operators."

The verified engineer's answer admits the allegations of the petition and, inter alia, states:

". . . the said plaintiff did specifically certify that funds were available for the expenditures for the purchase orders set out . . . and that in addition thereto he did certify in that there were sufficient funds to pay the estimated costs for county labor, to-wit: $3,920.00, and the estimated cost for equipment rental with operators, to-wit: $26,280.00, as set forth in aforesaid estimate."

Finally, the paragraph of the petition before the prayer reads:

"No part of this construction has been begun, but if begun and completed, that the plaintiff, as County Auditor will be duty bound to issue warrants to pay for aforesaid material and rentals for such construction and plaintiff is in doubt as to legality of proceedings in this case under the provisions of Section 5543.19 of the Revised Code of Ohio. That it is the contention of plaintiff that the defendants should have proceeded under the provisions of Sections 153.31 to 153.35 of the Revised Code of Ohio, which provide for public bidding after public advertising for such construction."

Whereupon plaintiff prays for declaratory judgment and relief under the provisions of Chapter 2721 of the Revised Code of Ohio.

### IV

Clearly these facts warrant a declaratory judgment, and this court fully concurs with the opinions of Judge Morrow in *Otten* v. *Cincinnati* (1937), 26 Ohio Law Abs. 17, 4 Ohio Supp. 101, 10 O. O. 276, and Judge Cramer in *Hamilton* v. *Van Gordon* (1959), 84 Ohio Law Abs. 202, 164 N. E. 2d 463, 12 O. O. 2d 102, aff. 109 Ohio App. 513, 159 N. E. 2d 778, 12 O. O. 2d 37; M. C. O., No. 36210, 12-9-1959, as to the propriety thereof. Surely the rule of law is ill served if honest men cannot reasonably know the law prior to their expenditure of time, materials, and labor.

### V

The court has arrived at the following Conclusions of Law:

The county commissioners are authorized to construct or reconstruct this or any bridge either by traditional bid procedure pursuant to Section 153.31 *et seq.*, of the Revised Code, or by force account pursuant to Section 5543.19 of the Revised Code.

The county commissioners have duly authorized the county engineer to reconstruct subject bridge "by force account" at an estimated cost of $134,814.86. Such action was duly recorded in the Commissioner's Journal of Paulding County pursuant to Section 305.11 of the Revised Code.

The county auditor provided the certificate of available and appropriated funds not otherwise encumbered in an amount to cover the estimated cost of $134,814.86, required by Section 5705.41 of the Revised Code, before any orders were issued or agreements entered into in respect to this bridge.

Pursuant to his authorization the county engineer has ordered specified materials at a specified price from The Ohio Bridge Corporation and Superior Steel Corporation. These are valid orders for materials which said corporations are free to accept and when delivered as agreed, the county is bound to pay for same.

Pursuant to his authorization the county engineer has negotiated for necessary equipment rental (with operators) with The Bridge Construction Company at a specified price. If this work is performed as agreed, and in substantial compliance with the provisions of Chapter 4115 of the Revised Code, and the engineer approves the work and allows the claim therefor, the county is firmly bound to pay therefor.

Pursuant to his authorization the county engineer has provided that about 3% of the work will be done with regular county employees. This is lawful but again Chapter 4115 of the Revised Code, applies as to the wages paid.

There is presently no constitutional provision and surely no manifest public policy (as long as the press remains free to comment on the acts of public officials regularly entered in their records) which renders the provisions of Section 5543.19 of the Revised Code ineffective or inapplicable to the facts of this case.

To this point the facts here disclose that the county commissioners, the county auditor, and the county engineer have, with diligence and fidelity, proceeded to reconstruct a bridge,

by force account, in full compliance with applicable law. If this bridge is now begun and completed in like manner, it will have been properly done "by force account" and the auditor is bound to issue the warrants on the county treasury to pay for all portions of the same, as such portions are accomplished and approved by the county engineer.

An appropriate journal entry may be prepared.

Appendix I

OFFICE OF THE PAULDING COUNTY ENGINEER
Paulding, Ohio
March 18, 1966

TO THE HONORABLE BOARD OF
PAULDING COUNTY COMMISSIONERS

Re: BRIDGE NO. 138-1.61 on C. R. 138
    over the Auglaize River in Brown Township.

Gentlemen:

Your attention is hereby called to the inadequate condition of the existing bridge on the Charloe Trail (County Road No. 138) over the Auglaize River in Brown Township, designated as Bridge No. 138-1.61.

This structure is one lane in width, and has been posted for a maximum safe load of 8 tons for several years.

The condition of the existing piers is good. It is therefore proposed to erect a new superstructure on the present piers. Existing abutments would be cut down and a new wall of poured concrete construction resting on steel piling would be constructed behind the remaining portion of the abutment walls.

The proposed structure would have a roadway width of 20 feet with an S-15 highway bridge load rating. Plans, specifications, and estimate are submitted herewith.

It is hereby requested that this office be authorized to proceed by "force account" to replace this structure as outlined above in accordance with the plan and specifications submitted.

Respectfully submitted,
/s/ Earl W. Van Ho
Paulding County Engineer.

PAULDING COUNTY ENGINEER'S OFFICE
Paulding, Ohio
March 18, 1966

ESTIMATE OF COST FOR IMPROVEMENT OF
BRIDGE NO. BRO 138-1.61 ON C. R. 138
OVER AUGLAIZE RIVER IN BROWN TOWNSHIP

*Description*: (New superstructure)

Welded steel truss bridge.
Total Span: 426 feet.
Roadway width: 20 feet.
Floor: 5/16'' thick 2'' x 6'' corrugated steel deck,
      paved with bituminous mix.

*Materials*:

| | |
|---|---:|
| Welded Superstructure | $ 72,420.00 |
| 5/16'' corrugated steel floor | 25,560.00 |
| Reinforcing steel | 547.00 |
| Steel piling | 3,445.00 |
| Concrete, Class ''C'' | 1,360.00 |
| Bituminous paving | 907.86 |
| Backfill | 375.00 |

*Labor*:                                         3,920.00

*Equipment Rental*: (With operators)   26,280.00

            TOTAL ESTIMATE     $134,814.86

/s/ Earl W. Van Ho
Paulding County Engineer

Appendix II

OFFICE OF THE BOARD OF
PAULDING COUNTY COMMISSIONERS
Paulding, Ohio
March 18, 1966

IN THE MATTER OF
BRIDGE NO. 138-1.61 on C. R. 138
OVER THE AUGLAIZE RIVER IN
BROWN TOWNSHIP

The Board of Paulding County Commissioners being in regular session with all members present, Mr. Johnson moved that the following resolution be adopted:

WHEREAS it has been called to the attention of this Board by the Paulding County Engineer that Bridge No. 138-1.61 on County Road No. 138 over the Auglaize River is inadequate to accommodate present-day traffic and legal loads, and

WHEREAS this bridge has been inspected by this Board and found unsuitable for restoration of the existing structure,

NOW THEREFORE, BE IT HEREBY RESOLVED that the Paulding County Engineer is hereby authorized and directed to proceed by force account in accordance with the provisions of Section 5543.19 of the Revised Code of Ohio, to construct the improvement in accordance with the plans and specifications submitted by him and approved by this Board this date. The estimated cost according to the Engineer's estimate filed this date is $134,814.86.

Mr. Williamson seconded the motion, and the roll being called resulted in the following vote:

| | |
|---|---|
| Mr. Roy S. Johnson | yes |
| Mr. Donald B. Parker | yes |
| Mr. Joe Williamson | yes |

The motion carried and the resolution was adopted.

s/ Donald B. Parker
_____
PRESIDENT OF THE BOARD

ATTEST: s/ Harry A. McMichael
_____
COUNTY AUDITOR & CLERK

Appendix III

CERTIFICATE

Office of Paulding County
Auditor
Paulding, Ohio
March 18, 1966

To: Earl W. Van Ho, County Engineer of
Paulding County, Ohio.

I, the undersigned, County Auditor and fiscal officer of Paulding County, Ohio, do hereby certify, under the provisions of Section 5705.41, Revised Code, as I have this day informed the Board of County Commissioners of Paulding County, Ohio, that there is now in the County Treasury or in the process of collection to the credit of an appropriate fund free from any previous encumbrances, a sufficient amount to meet the expenditure for Bridge No. 138-1.61 on County Road 138 over the Auglaize River in Brown Township, to-wit, the sum of $134,-814.86, all as set forth in your estimate this day submitted to the Board of County Commissioners of Paulding County, Ohio.

IN WITNESS WHEREOF, I have hereunto affixed my signature at Paulding, Ohio, this 18 day of March, A. D., 1966.

/s/ Harry A. McMichael
County Auditor and fiscal officer
of Paulding County, Ohio.

## Appendix IV

### PURCHASE ORDER

# To THE OHIO BRIDGE CORPORATION

## CAMBRIDGE, OHIO

FROM    Earl W. Van Ho, Paulding County Engineer    DATE March 18, 1966

Court House, Paulding, Ohio    OUR NO. ...............

DELIVER TO Bridge No. 138-1.61 on County Road 138    THEIR NO. ............

over Auglaize River at Charloe.    SALESMAN ..................

| | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|
| 1 | All-welded steel truss bridge consisting of One span @ 110 ft.; two spans @ 128 ft.; and one span @ 60 ft. with roadway width of 20 ft. Designed for S-15 Loading. | | $72,420.00 |
| | "O" Gage, 5/16" thick corrugated steel flooring for entire structure above. | | 25,560.00 |
| | | T O T A L......................$97,980.00 | |

ORDERED BY *Earl W. Van Ho*    I hereby certify that funds are available

Paulding County Engineer for the above expenditure.

Paulding, Ohio    APPROVED BY ...................................................

*Harry A. McMichael*

Harry A. Mc Michael
Paulding County Auditor.

Appendix V

**PURCHASE ORDER**

# *To* SUPERIOR STEEL CORPORATION

## Cambridge, Ohio

FROM    Earl W. Van Ho, Paulding County Engineer    DATE March 18, 1966

Paulding, Ohio        OUR No. ..............

DELIVER TO Bridge No. 138-1.61 on County Road 138    THEIR No. ............

over Auglaize River at Charloe.      SALESMAN ...................

| | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|
| 650 lin. ft. | 12" H-piling @ | 5.30 | $ 3,445.00 |
| 5476 lbs. | Miscellaneous reinforcing steel @ 0.10 | | 547.60 |
| | T O T A L.....................$3992.60 | | |

ORDERED BY *Earl W. Van Ho*     I hereby certify that funds are available

Paulding County Engineer for the above expenditure.

Paulding, Ohio      APPROVED BY ..................................

*Harry A. McMichael*

Harry A. Mc Michael
Paulding County Auditor.